## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

_____

CONSERVATION LAW FOUNDATION, INC.,    )
)
      Plaintiff,    )
)
v.    )      Civil Action No. 1:18-cv-00996-PB
)
)
GLENN NORMANDEAU, in his official capacity    )
as Executive Director of the New Hampshire    )
Fish and Game Department, *et al.*,    )
)
      Defendants.    )
_____)


### CONSERVATION LAW FOUNDATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE THE NON-LAY OPINION TESTIMONY OF MATTHEW PEHRSON

Plaintiff Conservation Law Foundation (CLF) respectfully submits this Memorandum of Law in support of its motion *in limine* to exclude from evidence admitted at trial the non-lay opinion testimony of Matthew Pehrson as undisclosed, unqualified, unreliable, and irrelevant to any material question of fact in this case.

### INTRODUCTION

On October 4, 2019, Defendants disclosed Matthew Pehrson as a witness whom they would call to offer non-lay expert opinion testimony at trial. Defendants disclosed that Mr. Pehrson might offer opinions regarding the "scientific[] appropriate[ness]" of aquaculture practices at the Powder Mill Facility and these practices' consistency with professional practices; and the "reasonable[ness]" of Defendants' installation of an interim wastewater system at the

Facility. Ex. 1 (Pehrson Disclosure) at 2.[1] Later, Defendants' counsel conceded that Defendants do not actually know what—if any—opinion testimony Mr. Pehrson will offer at trial, but that his "fact testimony may stray into expert opinion testimony." ECF No. 49 (Defs.' Exclusion Objection) at 2-3. On the day this motion *in limine* was due to be filed, Defendants' counsel informed CLF for the first time that Defendants no longer intend to submit written opinion testimony from Mr. Pehrson. Counsel did not disavow the possibility that Mr. Pehrson would stray into non-lay opinion testimony when called as a fact witness.[2]

Mr. Pehrson's opinions—planned or unplanned by Defendants' counsel—are inadmissible for three reasons. Defendants concede they do not in fact know what opinions Mr. Pehrson will offer at trial, rendering his opinions improperly undisclosed and inadmissible as a procedural matter. To the extent Mr. Pehrson's opinions would address wastewater management, wastewater systems, and water treatment, Mr. Pehrson has no expertise in these areas, and is, moreover, additionally unqualified on the basis of bias, as a junior employee at Defendants' Hatchery. Finally, Mr. Pehrson's unqualified opinions are irrelevant to the material factual disputes to be addressed at trial. The Court should exclude Mr. Pehrson's undisclosed, unqualified, unreliable, and irrelevant opinion testimony as inadmissible.

I.      **Defendants Concede They Do Not Know What Opinions Mr. Pehrson Will Offer.**

"Recognizing the importance of expert testimony in modern trial practice, the Civil Rules provide for extensive pretrial disclosure of expert testimony . . . consonant with the federal courts' desire to 'make a trial less a game of blindman's buff and more a fair contest with the

---

[1] Citations to "Ex. _" refer to the exhibits to the Declaration of Kenta Tsuda filed herewith.
[2] The possibility—raised by Defendants' counsel, not CLF—that Mr. Pehrson will stray into non-lay opinion testimony, also renders this motion justiciable notwithstanding Defendants' late-arriving change in position. While the parties could raise objections during Mr. Pehrson's live testimony, as a matter of efficiency and judicial economy, the Court should issue the relief sought in this Motion *in Limine*, setting the bounds of Mr. Pehrson's permissible testimony ex ante.

basic issues and facts disclosed to the fullest practical extent.'" *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992) (internal citation omitted). Even where an expert witness is not required to submit a written report, the party introducing this witness's opinion testimony must disclose "the subject matter on which the witness is expected to present evidence" as well as "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). When a party "fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

On October 4, 2019, Defendants disclosed Matthew Pehrson as a purported expert witness, stating that he would offer opinions on the "scientific[] appropriate[ness]" of aquaculture practices at the Powder Mill Facility and their consistency with professional practices; and the "reasonable[ness]" of Defendants' installation of an interim wastewater system at the Facility.[3] Ex. 1 (Pehrson Disclosure) at 2. Since then, however, Defendants' counsel has conceded that Defendants do not know what—if any—opinion testimony Mr. Pehrson might offer at trial:

> Mr. Pehrson's primarily fact testimony *may stray* into expert opinion testimony. . . . [T]he extent of Mr. Pehrson's opinion testimony, if any, *will not be known until trial*. . . . the scope of any opinion testimony to be offered by Mr. Pehrson . . . is *not yet known.*

ECF No. 49 (Defs.' Exclusion Objection) at 2-3 (emphasis added).

By not disclosing Mr. Pehrson's opinions, Defendants "fail[] to provide information . . . as required by Rule 26(a)." FED. R. CIV. P. 37(c)(1). And this non-disclosure does not qualify for

---

[3] Defendants also disclosed that Mr. Pehrson would opine on the "reasonable[ness]" of Defendants' efforts to reduce the need for and use of formalin at the Facility. Ex. 1 (Pehrson Disclosure) at 2. In light of the Court's decision on cross motions for summary judgment, there is no longer any live question of fact regarding formalin usage in this case, and so Mr. Pehrson's opinion—whatever its merits or reliability—cannot arise at trial. CLF does, however, reserve its rights to object to such opinion and other testimony, not least for lack of relevance and thus admissibility, if Defendants attempt to introduce it at trial.

3

any of the exceptions to Rule 37: Defendants have not justified it at all, let alone "substantially." *Id.* Defendants offer no reason for their failure to learn what opinions he intends to offer at trial. Nor is Defendants' non-disclosure "harmless." *Id*. Allowing Mr. Pehrson to offer undisclosed opinion testimony would frustrate CLF's ability to prepare rebuttal testimony and to cross examine Mr. Pehrson at trial, prejudicing CLF's case. *See Thibeault*, 960 F.2d at 244.

Mr. Pehrson's undisclosed opinions threaten to render trial an inefficient "game of blindman's buff" departing from the "fair contest" devised by this Court's orders and the Federal Rules. The Court should exclude these opinions as an unjustified and prejudicial violation of Defendants' disclosure obligations.

## II.    Mr. Pehrson Is Not Qualified to Offer Expert Opinions.

The proponent of expert opinion testimony must establish that the witness offering the opinion is "qualified as an expert by knowledge, skill, experience, training, or education." FED. R. EVID. 702; *Bogosian v. Mercedes-Benz of N. Am., Inc.*, 104 F.3d 472, 476 (1st Cir. 1997); *United States v. Tetioukhine*, 725 F.3d 1, 6 (1st Cir. 2013) ("The proponent of the evidence bears the burden of demonstrating its admissibility."). If opinion testimony clears this threshold, the Court considers whether the proposed subject matter of the expert opinion properly concerns 'scientific, technical, or other specialized knowledge' . . . [and] whether it rests on a reliable foundation." *Bogosian*, 104 F.3d at 476 (1st Cir. 1997) (internal citations omitted). "The reliable foundation requirement necessitates an inquiry into the methodology and the basis for an expert's opinion," under the so-called *Daubert* inquiry. *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012). Expert opinions that are unqualified or unreliable are inadmissible. FED. R. EVID. 702 (qualification as expert is determinative of admissibility); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (*Daubert* factors are determinative of admissibility for engineering and scientific expert testimony).

4

Here, Defendants have disclosed Mr. Pehrson as a witness who "may stray" into non-lay opinion testimony. ECF No. 49 (Defs.' Exclusion Objection) at 2. Notably, Defendants do not characterize Mr. Pehrson as an expert in any particular area, venturing only that "it is possible that testimony by Mr. Pehrson may constitute opinion testimony . . . [and that he] may present expert testimony at trial." Ex. 1 (Pehrson Disclosure) at 1. The record reflects that Mr. Pehrson graduated from Plymouth State University in 2012 with a bachelor's degree in environmental science and policy. *Id.* at 5; Ex. 3 (Pehrson Nov. 2019 Deposition Transcript) at 9:19-22. Mr. Pehrson has been employed by the Fish & Game Department as a "Hatchery Biological Technician" since 2015, and for one year before that, Mr. Pehrson was employed by Fish & Game as a "Fish Culturist." *Id*. at 4–5. While working for Fish & Game, Mr. Pehrson participated in a "Vermont Fish Culture School/Workshop," and in two courses on fish health. *Id.* at 4. Defendants otherwise disclose nothing regarding Mr. Pehrson's background and education besides Mr. Pehrson's self-characterizations ("[a]ttacks cases with a combination of tenacity and analytical thinking," "[w]ell versed in aquaculture system designing," "more than five years of achievement at a professional level"). *Id.*

With respect, Mr. Pehrson is not qualified to opine on topics of water treatment and pollutant-discharge practices nor the design and operation of wastewater systems.[4] During his six years of employment, Mr. Pehrson has focused on fish growth and health, not on the means of reducing or mitigating harmful discharges of Facility effluent. The two mentions of wastewater in Mr. Pehrson's resume involve, first, a certification issued by the New Hampshire Department of Environmental Services that Mr. Pehrson required to handle—e.g. to physically move—

---

[4] Additionally and alternatively, if "reasonableness" here or elsewhere is a legal determination, Mr. Pehrson's opinion would be inadmissible as an improper legal opinion. *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997).

wastewater at the Powder Mill Facility. Ex. 1 (Pehrson Disclosure) at 4;[5] *see also* Ex. 3 (Pehrson Nov. 2019 Deposition Transcript) at 10:13-11:21. The certification at most equips Mr. Pehrson to describe how he has physically moved wastewater or maintained wastewater collection systems at the Powder Mill Facility—non-opinion factual testimony—but does not qualify Mr. Pehrson to opine as to standards of scientific appropriateness or general professional practice.

Mr. Pehrson's opinions are also unreliable. Along with a lack of qualifications, Mr. Pehrson lacks method. Mr. Pehrson admits an uncritical, undiscriminating acceptance of, and deference to, the generic category of "journal articles"—a broad category that he could not refine.[6] Ex. 3 (Pehrson Nov. 2019 Deposition Transcript) at 34:20-35: 21. Similarly, Mr. Pehrson could provide no coherent method when questioned about how one would evaluate the efficacy of a wastewater system's design. Asked about how to assess the efficacy of the Hatchery's interim project, Mr. Pehrson stated that the system was "reasonable" because it allegedly reduced phosphorus levels in effluent—failing to explain how he reached his conclusion when a full flow-through of the interim project had not yet been tested. *See* Ex. 3 (Pehrson Nov. 2019 Deposition Transcript) at 40:13-19, 44:14-21; *see also id.* 40:21-23 (explaining that the efficacy

---

[5] The "NH Wastewater Treatment Facility Operator, Grade II" certification on Mr. Pehrson's resume signifies that he has graduated from high school, has worked for three years, and has passed a written exam. New Hampshire Department of Environmental Services, Fact Sheet, *Wastewater Treatment Certification* (2019) *available at* https://www.des.nh.gov/organization/commissioner/pip/factsheets/wwt/documents/web-2.pdf. It authorizes Mr. Pehrson to "maintain and operate various types of mechanical and computerized equipment" such as "pumps, pipes, valves and processing equipment to move wastewater through collection systems and through various treatment processes." *Id.*

[6] For example, in addressing how he evaluates "scientific appropriateness" Mr. Pehrson testified as follows:

> Q: Your expert disclosure also says that you will opine that aquaculture practices at the hatchery are scientifically appropriate and consistent with professional practices. What is scientifically appropriate?
>
> A: Based off peer-reviewed studies.
>
> Q: Like what?
>
> A: Journal articles. Like I said, U.S. Fish and Wildlife. Our practices are based off of a lot of what they do.

Ex. 3 (Pehrson Nov. 2019 Deposition Transcript) at 34:20-35:6.

of effluent migration fully through the interim project has not been tested). Mr. Pehrson's "technique or theory"—to the extent he has any—fails the simple test of logical coherence, let alone a more testing *Daubert* inquiry.

The sole exposure Mr. Pehrson has with wastewater systems is his involvement in the Powder Mill Facility's well-meaning, but ultimately failed "interim project." In the summer of 2019, Mr. Pehrson experimented with a small project to attempt to reduce phosphorus levels in cleaning water at the Facility. *See* Ex. 5 (Photograph of Mr. Pehrson and Interim Project); Ex. 2 (Pehrson Sept. 2019 Deposition Transcript) at 75:21-76:1. To design this project, Mr. Pehrson "look[ed] at a couple studies" and "d[id] out the math"—and otherwise spoke with a Department colleague, an engineer. Ex. 3 (Pehrson Nov. 2019 Deposition Transcript) at 39:22-23, 40:4-10. Construction of the interim project entailed Mr. Pehrson adding duckweed to tanks, running water from these tanks to another algae-containing tank, and then running that water through bags sitting atop woodchips. Ex. 2 (Pehrson Sept. 2019 Deposition Transcript) at 73:19-21, 74:1-7, 75:6-15. Mr. Pehrson was, by his own admission, unable to say whether his design was feasible to scale up to accommodate the totality of the Facility's effluent. In his own words, "I am not a professional engineer." Ex. 3 (Pehrson Nov. 2019 Deposition Transcript) at 53:11-17.

According to Dr. Wane Schneiter—who is a professional wastewater engineer[7]—Mr. Pehrson's wastewater project is "poorly designed" and "ha[s] not proven effective in controlling phosphorus discharges to the Merrymeeting River." Ex. 4 (Schneiter Report) at 1–2, 5–6. On a day that Defendants vacuum the Facility, the project accommodates at most 10,000 gallons out of the roughly 6.5 million gallons that will flow through the Facility that day, a small portion of

---

[7] Dr. Schneiter has a doctorate in Environmental Engineering from Utah State University and has been a licensed professional engineer since 1984. Ex. 4 (Schneiter Report) at 1. He has worked on over 100 water treatment projects, and taught courses on the design and operation of wastewater treatment systems for 26 years. *Id.*

the Facility's wastewater. *Id*. at 6. The failure of this interim project may necessitate that Defendants find another solution for cleaning water. Rather than evidencing bases of expertise, Mr. Pehrson's simple, small-scale, and likely temporary wastewater project betrays the opposite: the absence of qualifications to opine on issues relevant to the instant case.

Finally, Mr. Pehrson's status as a junior employee for Fish & Game is significant both as to his lack of qualifications and the unreliability of his opinions. "Generally, an expert's bias is not sufficient to exclude an expert under *Daubert*," but rather bears on the weight of expert testimony. *Downhole Stabilization Rockies Inc. v. Reliable Field Servs. LLC*, 2017 WL 3477743, at *3 (D. Wyo. Feb. 10, 2017). However, "an exception to this rule" applies "when an expert becomes an advocate for a cause . . . therefore depart[ing] from the ranks of an objective expert witness, and any resulting testimony would be unfairly prejudicial and misleading." *Id.* (quoting *Viterbo v. Dow Chem. Co.*, 646 F. Supp. 1420, 1425 (E.D. Tex. 1986) *aff'd* 826 F.2d 420 (5th Cir. 1987)). Courts have held that "[o]ne factor in determining whether an expert crosses this threshold is whether the proffered expert has sought or is employed by one party to the lawsuit." *Id.* A junior Facility technician, called upon to testify by his employers—all top officials of a state agency—Mr. Pehrson cannot be anything but "an advocate for a cause," namely his employers' cause. He cannot be qualified or relied upon for opinion testimony in this case.

The Court should exclude Mr. Pehrson's opinions regarding wastewater systems as unqualified, unreliable, and thus inadmissible.

## III.    Mr. Pehrson's Opinions Are Irrelevant to Any Material Factual Dispute.

To be admissible, evidence must be relevant, meaning it must have "any tendency to make a fact more or less probable than it would be without the evidence" where "the fact is of consequence in determining the action." FED. R. EVID. 401, 402. "Irrelevant evidence is not admissible" FED. R. EVID. 402.

Following the Court's decision on summary judgment, three factual disputes remain for trial: whether there is a causal nexus between Defendants' discharges of dissolved and solid-bound phosphorus and the degraded water quality conditions in the Merrymeeting River; whether Defendants have discharged and could revert to discharging concentrated cleaning water from settling ponds to the Merrymeeting River; and whether Defendants clean Facility tanks and raceways with the frequency required by their Best Management Practices Plan. To the extent Defendants describe Mr. Pehrson's potential opinion testimony at all, they state that Mr. Pehrson would opine as to the "scientific[] appropriate[ness]" of aquaculture practices at the Powder Mill Facility and their consistency with professional practices; and the "reasonable[ness]" of Defendants' installation of an interim wastewater system at the Facility. Ex. 1 (Pehrson Disclosure) at 2.

These opinions are not relevant to any factual question to be tried. Regarding Mr. Pehrson's first opinion, whether "aquaculture practices at the Hatchery are scientifically appropriate and consistent with professional practices" is not material to any of the remaining claims. Ex. 1 (Pehrson Disclosure) at 2. CLF's Counts I and II (the phosphorus-related counts) address whether Defendants' discharges of pollutants to the Merrymeeting River cause violations of state water quality standards and the Facility's NPDES Permit. Mr. Pehrson intends to opine on the manner in which Defendants' generate these pollutants—e.g. whether they generate fish feces and acidity from "appropriate[ly]" raised trout. This point is immaterial, without any conceivable bearing on questions of liability or remedy. The opinion is thus irrelevant.

Second, Mr. Pehrson intends to opine that "Defendants have taken reasonable steps to reduce discharges of phosphorus, nitrogen and solids by installing an interim algae micro-culture based wastewater system at the Hatchery." Ex. 1 (Pehrson Disclosure) at 2. To the extent that

wastewater management is encompassed within "aquaculture practices" at the Facility, Mr.

Pehrson also may intend to opine that Defendants' handling of Facility effluent has been

"scientifically appropriate and consistent with professional practices." *Id.* This point is also

immaterial: neither the Facility's NPDES Permit nor the Clean Water Act shield permit

violations that are "reasonable" or scientifically or professionally appropriate. Mr. Pehrson's

opinion is irrelevant here too.

The Court should exclude Mr. Pehrson's opinions regarding wastewater systems as

irrelevant and therefore inadmissible.

## CONCLUSION

For the above reasons, CLF respectfully requests that the Court exclude from the

evidence admitted at trial Matthew Pehrson's non-lay opinion testimony.

Respectfully submitted,

CONSERVATION LAW FOUNDATION, INC.,

DATED: October 9, 2020                    By its attorneys:

/s/ Heather A. Govern
Heather A. Govern, *Admitted Pro Hac Vice*
Chelsea E. Kendall, *Admitted Pro Hac Vice*
Kenta Tsuda, *Admitted Pro Hac Vice*
Conservation Law Foundation
62 Summer St.
Boston, MA 02110
(617) 850-1765
hgovern@clf.org

/s/ Thomas F. Irwin
Thomas F. Irwin
N.H. Bar No. 11302
Conservation Law Foundation
27 North Main Street
Concord, NH 03301
(603) 225-3060
tirwin@clf.org