# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC. <br><br> Plaintiff, <br><br> v. <br><br> SCOTT MASON, in his official capacity as Executive Director of the New Hampshire Fish and Game Department; *et al*. <br><br> Defendants. | Case No. 1:18-cv-00996 |

**PLAINTIFF CONSERVATION LAW FOUNDATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

On January 1, 2021, NPDES Permit No. NH0000710 for the Powder Mill State Fish Hatchery ("the Permit") became effective. The Permit authorizes Defendants to discharge culture water and treated hatchery effluent through the Powder Mill Facility's Outfalls 001 and 002 to the Merrymeeting River, provided that discharges do not, *inter alia*, have an average monthly phosphorus concentration greater than 12 micrograms per liter (µg/L) and/or a cumulative annual phosphorus load greater than 227 pounds. ECF No. 90-2 (2020 Permit) at 4, 6, 8.

There is no genuine dispute that Defendants are violating the Permit's phosphorus concentration and mass limits. On February 1, 2021, the Powder Mill Facility's supervisor, Edward Malone, notified EPA that Defendants are violating the Permit's concentration limit: "the phosphorus was above the limits given in our permit." Ex. 1 (Malone DMR Letter).[1] Defendants' effluent also exceeds the Permit's 227 pounds-per-year phosphorus load maximum. During the seven-year period for which records are available, Defendants have never discharged an annual phosphorus load less than 485 pounds—that is, 213 percent of the current Permit's maximum. *See infra* at tbl. 2 & fig. 2. Defendants' current discharges are consistent with previous years'—nothing has changed. Indeed, as Facility staff concede, Defendants lack "current phosphorus removal capabilities" to reduce the Facility's discharges. Ex. 1 (Malone DMR Letter). Defendants are in the process of discharging well more than 227 pounds of phosphorus annually to the River.

CLF moves for summary judgment on Counts VII and VIII to enforce the Permit's phosphorus concentration and mass limits, and respectfully requests the Court to remedy Defendants' ongoing violations of the Permit's phosphorus limits by, *inter alia*, entering a

---

[1] Citations to "Ex. \_" refer to the exhibits to the Declaration of Kenta Tsuda filed herewith.

1

declaratory judgment and an injunctive order enjoining Defendants' ongoing and future violations of the Permit and the Clean Water Act.[2]

## STATEMENT OF UNDISPUTED FACTS

### I. The Powder Mill Facility and the Merrymeeting River

Defendants are officials who operate the Powder Mill State Fish Hatchery (the "Facility"), which is located in New Durham, New Hampshire on the Merrymeeting River. Answer at ¶ 13-18 (ECF No. 26); ECF No. 47-3 (Watershed Management Plan) at 4 of 97; ECF No. 47-4 (Map of Ponds). After flowing through the Facility, the River travels south through a series of small ponds, including Marsh Pond, Jones Pond, and Downing Pond. ECF No. 47-4 (Map of Ponds); ECF No. 47-3 (Watershed Management Plan) at 18 of 97. The Merrymeeting River watershed is "treasured as a recreational haven" by residents and visitors who fish, hike, boat, canoe, kayak, and swim there. ECF No. 47-3 (Watershed Management Plan) at 19 of 97.

At the Facility, Defendants rear over 300,000 fish each year to stock waterbodies in New Hampshire. Answer at ¶ 32; ECF No. 47-6 (Sept. 2019 BMP Plan) at 3.

The Facility uses an average of 6.5 million gallons of water per day from Merrymeeting Lake and funnels the water to "raceways" (long, narrow, cement channels), circular tanks, and ponds in which Defendants raise fish. ECF No. 47-5 (2011 Permit) at 19, 26 of 46; ECF No. 47-8 (Schneiter Report) at 2. Defendants generate waste, consisting of mostly fish feces and fish food, which contaminates the water passing through the Facility. Defendants dispose of 99.98 percent

---

[2] If and when the Court grants CLF's motion for partial summary judgment on Count VII and/or Count VIII and enters an injunctive order for Defendants to submit a plan for the Court's approval to abate discharges in excess of the Permit's concentration and/or mass limits, CLF would be open to voluntarily dismissing its phosphorus-related counts related to the Permit's incorporation of State Water Quality Standards (Counts 1 and 2) on the ground that the Court's effective relief as to Counts 7 and/or 8 also remedy Counts 1 and 2.

of the wastewater flowing through the Facility by releasing it—untreated—to the River via two pipes. ECF No. 47-8 (Schneiter Report) at 2, 6; ECF No. 47-11 (Smith Dep.) at 56:17-57:16.

The fish-feed and fish-feces waste is the source of dissolved and undissolved phosphorus in the Facility's water. ECF No. 47-08 (Schneiter Report) at 2, 6. The phosphorus concentration of Facility wastewater increases by 1200 percent as it passes through the Facility. ECF No. 47-3 (Watershed Management Plan) at 45 of 97.

In 2020, the New Hampshire Fish & Game Department made a capital budget request to the Legislature for a $4.3 million appropriation in the fiscal year 2022/2023 biennium (beginning July 1, 2021) to fund the design and construction of a wastewater treatment system to treat Facility effluent. ECF No. 78-1 (Smith Aff.) at ¶ 4. Defendants are months, possibly years, away from even beginning initial design of a future treatment infrastructure to reduce phosphorus pollution. Operation of such a system at the Facility is years away.

## II. Defendants' Phosphorus Discharges

### A. Concentration of Phosphorus Discharges

Defendants discharge effluent with phosphorus concentrations as high as 90 µg/L from Outfall 001 and 110 µg/L from Outfall 002. *Infra* at 4 tbl. 1. EPA found that the phosphorus concentrations from the Facility's outfalls averaged 50 to 70 µg/L. ECF No. 90-2 (2020 Permit) at 51. At least since 2013, there has never been a quarter during which Defendants' discharges from both outfalls had an average phosphorus concentration of less than or equal to 12 µg/L. The following table and figure summarize the average phosphorus concentrations of Defendants' discharges over the past seven years, as self-reported by Defendants:

3

| Table 1: The Powder Mill Facility Discharge, Average Phosphorus Concentration, 2013-21[3] | | |
|---|---|---|
| **Date Reported** | **Average Phosphorus Concentration Outfall 001 (µg/L)** | **Average Phosphorus Concentration Outfall 002 (µg/L)** |
| Q2 2013 | 10 | 20 |
| Q3 2013 | 30 | 110 |
| Q4 2013 | 20 | 80 |
| Q1 2014 | 0 | 30 |
| Q2 2014 | 0 | 30 |
| Q3 2014 | 50 | 90 |
| Q4 2014 | 60 | 60 |
| Q1 2015 | 0 | 40 |
| Q2 2015 | 20 | 40 |
| Q3 2015 | 30 | 80 |
| Q4 2015 | 20 | 50 |
| Q1 2016 | 10 | 40 |
| Q2 2016 | 10 | 30 |
| Q3 2016 | 30 | 50 |
| Q4 2016 | 30 | 55 |
| Q1 2017 | 20 | 50 |
| Q2 2017 | 40 | 50 |
| Q3 2017 | 90 | 55 |
| Q4 2017 | 34 | 66 |
| Q1 2018 | 16 | 35 |
| Q2 2018 | 27 | 43 |
| Q3 2018 | 42 | 68 |
| Q4 2018 | 396.5 | 39 |
| Q1 2019 | 13 | 23 |
| Q2 2019 | 22 | 37 |
| Q3 2019 | 33 | 36.8 |
| Q4 2019 | 36 | 26 |
| Q1 2020 | 21 | 21 |
| Q2 2020 | 65 | 86 |
| Q3 2020 | 60 | 51 |
| Q4 2020 | 12 | 14 |

---

[3] EPA, Enforcement and Compliance History Online (ECHO), Pollutant Loading Report (DMRs) https://echo.epa.gov/trends/loading-tool/reports/dmr-pollutant-loading?permit_id=NH0000710 &year=2020 (last visited Feb. 16, 2021).



Figure 1: The Powder Mill Facility Discharge, Average Phosphorus Concentration, 2013-20[4]

---

[4] EPA, Enforcement and Compliance History Online (ECHO), Pollutant Loading Report (DMRs) https://echo.epa.gov/trends/loading-tool/reports/dmr-pollutant-loading?permit_id=NH0000710&year =2020 (last visited Feb. 16, 2021). To be conservative, CLF has excluded the extremely high sample result from Outfall 001 from Quarter 4 2018, in case this reading was attributable to sampling or clerical error.

5

Defendants' current discharges continue to have phosphorus concentrations that remain above 12 µg/L. On January 18, 2021, Facility superintendent Edward Malone sent a letter to EPA stating:

> Per the permit, I am submitting to you in writing that the phosphorus was above the limits given in our permit for discharge 002. The permit states that, the discharge needs to be equal to or less than 12 micrograms per liter or .012mg/L. On 1/6/21-1/7/21 our discharge was outside of these guidelines.

Ex. 2 (Malone Jan. 18th Letter) at 1. On January 25, 2021, Facility superintendent Edward Malone sent another letter to EPA stating:

> Per the permit, I am submitting to you in writing that the phosphorus was above the limits given in our permit for discharges 001 and 002. The permit states that, the discharge needs to be equal to or less than 12 micrograms per liter or .012mg/L. On 1/13/21-1/14/21 our discharges were outside of these guidelines.

Ex. 3 (Malone Jan. 25th Email & Letter). On February 1, 2021, Mr. Malone sent yet another letter to EPA stating:

> Per the permit, I am submitting to you in writing that the phosphorus was above the limits given in our permit for discharges 001 and 002. The permit states that, the discharge needs to be equal to or less than 12 micrograms per liter or .012mg/L. On 1/20/21-1/21/21 our discharges were outside of these guidelines.

Ex. 4 (Malone Feb. 1st Letter). In January 2021, the average monthly phosphorus concentration for discharges was 12.25 µg/L for Outfall 001 and 14.75 µg/L for Outfall 002. *See* Ex. 5 (Jan. 7th Sample Analysis); Ex. 6 (Jan. 14th Sample Analysis); Ex. 7 (Jan. 21st Sample Analysis); Ex. 8 (Jan. 28th Sample Analysis).

On February 12, 2021, Mr. Malone sent a letter to EPA summarizing the results of the month of January 2021: "Total phosphorus concentration for the Month of January 2021 was above our Monthly average maximum limit." Ex. 1 (Malone DMR Letter). According to Mr. Malone, the cause of the exceedance was the limit on Defendants' "current phosphorus removal

6

capabilities until pending upgrades to water quality management are implemented." *Id.* The record is conclusive: the phosphorus concentrations of Defendants' discharges will not decrease anytime in the near future because—as Mr. Malone concedes—Defendants are incapable of reducing concentrations at current levels of fish production. *Id.*

    **B.**    *Mass of Phosphorus Discharges*

Since 2007, there has never been a year when Defendants' discharges have had an annual cumulative phosphorus load equal to or less than 227 pounds. The following table and figure summarize the annual cumulative phosphorus load of Defendants' discharges over the past thirteen years, as self-reported by Defendants:

| Table 2: The Powder Mill Facility Discharge, Annual Cumulative Phosphorus Load, 2007-20[5] ||
|---|---|
| **Year** | **Annual Cumulative Phosphorus Load** |
| 2007 | 667 lbs. |
| 2008 | 718 lbs. |
| 2009 | 1,266 lbs. |
| 2010 | 485 lbs. |
| 2011 | 709 lbs. |
| 2012 | 987 lbs. |
| 2013 | 619 lbs. |
| 2014 | 829 lbs. |
| 2015 | 583 lbs. |
| 2016 | 688 lbs. |
| 2017 | 983 lbs. |
| 2018 | 1,354 lbs. |
| 2019 | 502 lbs. |
| 2020 | 687 lbs. |

---

[5] EPA, Enforcement and Compliance History Online (ECHO), Pollutant Loading Report (DMRs) https://echo.epa.gov/trends/loading-tool/reports/dmr-pollutant-loading?permit_id=NH0000710 &year=2020 (last visited Feb. 16, 2021).

**Figure 2: The Powder Mill Facility Discharge, Annual Cumulative Phosphorus Load, 2007-20**[6]



In addition, Defendants' self-reported total phosphorus loads may understate the magnitude of their actual discharge. Aquatic biologist and limnologist Dr. Jack Rensel used a mass-balance method to calculate that in 2019 Defendants discharged 884 pounds (or 401 kilograms) of total phosphorus through their outfalls—significantly more than the 502 pounds Defendants self-reported for that year. ECF No. 47-17 (Rensel Report) at 18. Even using the more conservative figures that Defendants self-report, however, Defendants' lowest annual phosphorus load on

---

[6] EPA, Enforcement and Compliance History Online (ECHO), Pollutant Loading Report (DMRs) https://echo.epa.gov/trends/loading-tool/reports/dmr-pollutant-loading?permit_id=NH0000710&year =2020 (last visited Feb. 16, 2021).

record was 485 pounds in 2010. EPA, *Enforcement and Compliance History Online (ECHO), Pollutant Loading Report (DMRs)*, https://echo.epa.gov/trends/loading-tool/reports/dmr-pollutant-loading?permit_id=NH0000710&year=2020 (last visited Feb. 16, 2021). The record indicates the phosphorus loads of Defendants' discharges will not fall anytime in the near future.

## ARGUMENT

I.  **The Court Has Jurisdiction to Enter Summary Judgment and Award CLF's Requested Relief.**

Conservation Law Foundation (CLF) brings this suit to address Defendants' violations of a federal permit, raising federal questions, and seeking exclusively prospective relief, namely, declaratory and injunctive relief and reasonable litigation costs, under the citizen-suit provision of the Clean Water Act. 28 U.S.C. §§ 1331, 2201–02; 33 U.S.C. §§ 1365(a), (d).

CLF has standing to bring these claims. Plaintiff's members have suffered a concrete and particularized injury in fact that is actual or imminent, not conjectural or hypothetical; the injury is fairly traceable to Defendants' actions; and it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). CLF members have enjoyed, used, and recreated on and in the Merrymeeting River, including Marsh, Jones, and Downing Ponds, and plan to continue to do so. ECF No. 47-15 (Gelinas Decl.) at 2, 6; ECF No. 47-25 (Quimby Decl.) at 1-3, 5-6; ECF No. 47-24 (Hoover Decl.) at 2-3. Defendants' violations of the Clean Water Act continue to harm these CLF members' abilities to enjoy, use, and recreate in and on these waterbodies. ECF No. 47-15 (Gelinas Decl.) at 6-7; ECF No. 47-25 (Quimby Decl.) at 4-6; ECF No. 47-24 (Hoover Decl.) at 2-4. For example, CLF members have curtailed and will continue to curtail their uses of the River in light of fears for the health of themselves and their families from exposure to harmful cyanobacteria outbreaks caused by Defendants' unlawful discharges of

9

phosphorus. ECF No. 47-15 (Gelinas Decl.) at 6-7; ECF No. 47-25 (Quimby Decl.) at 4-5; ECF No. 47-24 (Hoover Decl.) at 2, 4. The Court's grant of the relief requested by CLF will redress and terminate these harms from Defendants' ongoing violations. ECF No. 99 (Second Amended Complaint) at 34-35.

## II.     Standard of Review

A movant is entitled to summary judgment when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact is one that has the potential to affect the outcome of the suit under the applicable law." *Conservation Law Found., Inc. v. New Hampshire Fish & Game Dep't,* 2020 WL 5102830, at *1 (D.N.H. Aug. 27, 2020) (internal quotation marks omitted). "A genuine dispute exists if a reasonable jury could resolve the disputed fact in the nonmovant's favor." *Id.* (internal quotation marks omitted).

## III.    Defendants' Discharges Violate the Permit's 12 μg/L Monthly Phosphorus Limit (Count VII).

The Clean Water Act prohibits the addition of any pollutant to navigable waters from any point source except as authorized by a National Pollutant Discharge Elimination System ("NPDES") permit applicable to that point source. 33 U.S.C. §§ 1311(a), 1362(12). The "discharge of a pollutant" is "[a]ny addition of any 'pollutant' or combination of pollutants to 'waters of the United States' from any 'point source.'" 40 C.F.R. § 122.2; *see also* 33 U.S.C. § 1362(12). A "pollutant" is any "solid waste," "sewage," "chemical wastes, biological materials," and "agricultural waste discharged into water." 33 U.S.C. § 1362(6). "[T]he Facility's outfalls are indisputably point sources." *Conservation Law Found., Inc.*, 2020 WL 5102830, at *11. Under NPDES Permit NH0000710, Defendants are not authorized to discharge effluent from the

Facility's outfalls where the average monthly concentration of total phosphorus exceeds 12 µg/L. ECF No. 90-3 (2020 Permit) at 2, 4.

There is no genuine dispute that Defendants are currently discharging effluent with an average monthly phosphorus concentration in excess of 12 µg/L. During the past month, the supervisor of the Powder Mill Facility, Mr. Edward Malone, has reported that the Facility is discharging effluent with a total phosphorus concentration in excess of the Permit's limits:

- On January 18, 2021, Mr. Malone informed EPA "the phosphorus was above the limits given in our permit for discharge 002. The permit states that, the discharge needs to be equal to or less than 12 micrograms per liter or .012mg/L. On 1/6/21-1/7/21 our discharge was outside of these guidelines." Ex. 2 (Malone Jan. 18th Letter) at 1.

- On January 25, 2021, Mr. Malone informed EPA that, again, "phosphorus was above the limits given in our permit for discharges 001 and 002," namely, "[t]he permit states that, the discharge needs to be equal to or less than 12 micrograms per liter or .012mg/L. On 1/13/21-1/14/21 our discharges were outside of these guidelines." Ex. 3 (Malone Jan. 25th Email & Letter) at 2.

- On February 1, 2021, Mr. Malone informed EPA that, yet again, "phosphorus was above the limits given in our permit for discharges 001 and 002," namely, "[t]he permit states that, the discharge needs to be equal to or less than 12 micrograms per liter or .012mg/L. On 1/20/21-1/21/21 our discharges were outside of these guidelines." Ex. 4 (Malone Feb. 1st Letter) at 1.

The average monthly total phosphorus concentration for Defendants' discharges from Outfalls 001 and 002 were 12.25 µg/L and 14.75 µg/L, respectively. *Supra* at 6.

Throughout the pendency of this litigation, and for years before it commenced,

Defendants have consistently discharged effluent with an average phosphorus concentration (computed quarterly prior to January 2021) in excess of 12 µg/L. *See supra* at 4–5 tbl. 1 & fig. 1. Since 2013, there has never been a quarter during which Defendants' average phosphorus concentration of discharges from both of its two outfalls were at or below 12 µg/L. *See supra* at 3–5 & tbl. 1 & fig. 1. Also, given that total phosphorus concentrations in Defendants' discharges in past years are lower in the winter, the uncontroversial inference, evidenced by the record, is that phosphorus concentrations will rise well above 12 µg/L as springtime approaches. The record indicates the phosphorus concentrations of Defendants' discharges will not decrease anytime in the near future. *See supra* at 7.

The summary judgment record allows for no genuine dispute that Defendants' are violating and will continue to violate the Permit's 12 µg/L total phosphorus average monthly concentration maximum.

### IV. Defendants' Discharges of Phosphorus Violate the Permit's 227 lbs./year Maximum (Count VIII).

Under NPDES Permit NH0000710, Defendants are not authorized to discharge effluent from the Facility's outfalls where the annual cumulative load of total phosphorus exceeds 227 pounds. ECF No. 99-3 (2020 Permit) at 6.

Defendants are currently discharging effluent with an annual cumulative phosphorus load in excess of 227 pounds. As far back as records go—to 2007—Defendants have self-reported discharging a phosphorus load well in excess of 227 pounds per year. *Supra* at 7–8 & tbl. 2 & fig. 2. Defendants' lowest self-reported annual cumulative phosphorus was 485 pounds in 2010. *Supra* at 7 & tbl. 2. In 2020, Defendants self-reported discharging an annual cumulative phosphorus load of 687 pounds. *Supra* at 7 tbl. 2. And these self-reported figures likely understate the true cumulative phosphorus load that Defendants discharge to the Merrymeeting

River. *Supra* at 8–9. The record includes no evidence to suggest Defendants' operations will change to reduce the phosphorus load of their discharges from the Facility.

The summary judgment record allows for no genuine dispute that Defendants' are violating and will continue to violate the Permit's 227 pounds per year total phosphorus load maximum.

## **CONCLUSION**

For the foregoing reasons, as there is no genuine dispute of material fact as to either Counts VII and VIII, CLF seeks judgment as a matter of law on these Counts.

DATED: February 19, 2021            Respectfully submitted,

CONSERVATION LAW FOUNDATION, INC.,

*/s/ Heather A. Govern*
Heather A. Govern, *Admitted Pro Hac Vice*
Chelsea E. Kendall, *Admitted Pro Hac Vice*
Kenta Tsuda, *Admitted Pro Hac Vice*
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
(617) 850-1765
hgovern@clf.org


*/s/ Thomas F. Irwin*
Thomas F. Irwin
N.H. Bar No. 11302
Conservation Law Foundation
27 North Main Street
Concord, NH 03301
(603) 225-3060
tirwin@clf.org

13

## CERTIFICATE OF SERVICE

      I hereby certify that on February 19, 2021, the foregoing document was filed through the ECF system, by which means a copy of the filing will be sent electronically to all parties registered with the ECF system.

*/s/ Kenta Tsuda*
Kenta Tsuda