**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

|  |  |
|---|---|
| CONSERVATION LAW FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT MASON, in his official capacity as EXECUTIVE DIRECTOR of the NEW HAMPSHIRE FISH AND GAME DEPARTMENT; and JOHN CAVENEY, PAUL DEBOW, ALBERT J. DEROSA, RAY GREEN, CHRISTOPHER HODGDON, MEGGAN HODGSON, MARC LACHANCE, PAUL G. MCINNIS, SUSAN PRICE, ERIC G. STOHL, and BRUCE TEMPLE, in their official capacities as the COMMISSIONERS of the NEW HAMPSHIRE FISH AND GAME COMMISSION,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **Civil No. 1:18-cv-00996-PB** |
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>STATE OF NEW HAMPSHIRE; and NEW HAMPSHIRE FISH AND GAME DEPARTMENT,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**CONSENT DECREE**

**TABLE OF CONTENTS**

I.      JURISDICTION AND VENUE ............................................................ 3
II.      APPLICABILITY ............................................................................... 3
III.      OBJECTIVES ..................................................................................... 4
IV.      DEFINITIONS ................................................................................... 4
V.      COMPLIANCE REQUIREMENTS ................................................. 6
VI.      REPORTING REQUIREMENTS ................................................... 24
VII.      STIPULATED PENALTIES ............................................................ 27
VIII.      FORCE MAJEURE .......................................................................... 31
IX.      DISPUTE RESOLUTION ................................................................ 33
X.      INFORMATION COLLECTION AND RETENTION .................... 35
XI.      EFFECT OF SETTLEMENT / RESERVATION OF RIGHTS ........... 37
XII.      COSTS ............................................................................................... 39
XIII.      NOTICES ......................................................................................... 39
XIV.      EFFECTIVE DATE .......................................................................... 40
XV.      RETENTION OF JURISDICTION ................................................. 41
XVI.      MODIFICATION .............................................................................. 41
XVII.      TERMINATION ............................................................................... 41
XVIII.   PUBLIC PARTICIPATION ............................................................ 42
XIX.      SIGNATORIES / SERVICE .............................................................. 43
XX.      INTEGRATION ............................................................................... 43
XXI.      FINAL JUDGMENT ........................................................................ 43
XXII.      26 U.S.C. § 162(F)(2)(A)(II) IDENTIFICATION ........................... 44
XXIII.   APPENDIX ....................................................................................... 44

Plaintiff Conservation Law Foundation ("CLF") filed a complaint in this action on October 31, 2018, which was subsequently amended on March 27, 2019, and February 10, 2021 (as amended the "CLF Complaint"), alleging, under Section 505 of the Clean Water Act (the "Act"), 33 U.S.C. § 1365, that the New Hampshire Fish and Game Department and the other above-captioned defendants (collectively, "Defendants") violated and continue to violate Section 301(a) of the Act, 33 U.S.C. § 1311(a), and EPA-issued National Pollutant Discharge Elimination System ("NPDES") Permit No. NH0000710 (the "Permit"), including both narrative and numeric limits on pollutants discharged to the Merrymeeting River from the Powder Mill State Fish Hatchery in New Durham, New Hampshire (the "Facility").

The CLF Complaint further alleges that the Facility has been discharging significant amounts of pollutants from two outfalls into the Merrymeeting River (Waterbody Segment NHRIV700020102-08) (the "River"), degrading the health of the River and its impoundments, including Marsh Pond (Waterbody NHIMP700020102-01-02), Jones Dam Pond (Waterbody NHIMP700020102-01-01), and Downing Pond (Waterbody NHLAK700020102-02), creating conditions that have precluded the recreational use of portions of the River and threatening the health of Lake Winnipesaukee's Alton Bay downstream. Specifically, the CLF Complaint alleges that the Facility has discharged and continues to discharge wastewater associated with its fish production operations into waters of the United States in violation of the Permit's effluent limitations (1) prohibiting discharges that cause violations of State water quality standards; (2) requiring that the receiving waters remain free of pollutants and non-natural effects that interfere with designated uses and harm aquatic life; (3) restricting pH levels, in addition to violations of State certification requirements for pH; (4) prohibiting the direct discharge of

cleaning water; (5) requiring implementation and maintenance of best management practices; (6) prohibiting discharges with an average monthly phosphorus concentration in excess of 12 micrograms per liter (μg/L); and (7) prohibiting discharges with an annual cumulative phosphorus load in excess of 227 pounds.

Concurrently with the lodging of this Consent Decree , Plaintiff-Intervenor, United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), (1) filed a motion to intervene in the citizen suit to protect the interests of the United States in the uniform and effective application of federal environmental laws; and (2) filed a complaint in this action alleging that Defendants violated and continue to violate Section 301(a) of the Act, 33 U.S.C. § 1311(a), by discharging pollutants into waters of the United States from the Facility in violation of its Permit (the "U.S. Complaint").

The New Hampshire Department of Environmental Services ("NHDES") is an agency of the State that, among other things, implements laws and policies designed to achieve and maintain compliance with State water quality standards.  While NHDES is not a plaintiff or defendant in this action or a party to this Consent Decree, the Parties agree that its review of and consultation regarding certain deliverables required under this Consent Decree may help achieve the Decree's goals, as described below in Section III (Objectives).

Defendants do not admit any liability to CLF or the United States arising out of the transactions or occurrences alleged in their complaints.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the admission of any issue of fact or law, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of CLF's action pursuant to Section 505(a) of the Act, 33 U.S.C. § 1365(a), and 28 U.S.C § 1331, and over the subject matter of the United States' action pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b) and 28 U.S.C. §§ 1331, 1345, and 1355, and over the Parties.  Venue lies in this District pursuant to Section 505(c)(1) and (2) of the Act, 33 U.S.C. § 1365(c)(1) and (2), and Section 309(b) of the Act, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b)-(c) and 1395(a), because Defendants are located in this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants and consent to venue in this judicial district.

2.    For purposes of this Consent Decree, Defendants agree that the Complaints state claims upon which relief may be granted pursuant to Sections 301(a) and 504 of the Act, 33 U.S.C. §§ 1311(a) and 1364.

## II.    APPLICABILITY

3.    The obligations of this Consent Decree apply to and are binding upon the United States, CLF, and Defendants, and upon any successors, assigns, or other entities or persons otherwise bound by law.

4.    No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of the Decree are implemented, unless (1) the transferee agrees to undertake

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

3

the obligations required by this Decree and to be substituted for the Defendants as a Party under the Decree and thus be bound by the terms thereof, and (2) the United States consents to relieve Defendants of their obligations. The United States' decision to refuse to approve the substitution of the transferee for the Defendants shall not be subject to judicial review.

5.      Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.    OBJECTIVES

7.      The objectives of this Consent Decree include requiring Defendants to come into compliance with Section 301(a) of the Act, 33 U.S.C. § 1311(a), and the Permit, if and as amended, including both narrative and numeric limits on pollutants discharged to the Merrymeeting River from the Facility, and to address the degradation of the water quality of the River, including its impoundments, that has been and continues to be caused or contributed to by the discharge of pollutants from the Facility and take steps that help achieve applicable water quality standards in those waters.

## IV.    DEFINITIONS

8.      Terms used in this Consent Decree that are defined in the Act, or in regulations promulgated pursuant to the Act, or in the Permit have the meanings assigned to them in the Act

or such regulations or the Permit, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

"Complaints" means the complaints filed by CLF and the United States in this action.

"Consent Decree" or "Decree" means this Decree and the appendix attached hereto (listed in Section XXIII), and all EPA-approved deliverables required under Section V (Compliance Requirements).  If there is a conflict between a provision in Sections I through XXIII and a provision in any appendix or deliverable, the provision in Sections I through XXIII controls.

"Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day.

"Defendants" means the persons or entities named as defendants in the Complaints and identified in the caption of this Consent Decree.

"DOJ" means the United States Department of Justice and any of its successor departments or agencies.

"EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

"Effective Date" means the definition provided in Section XIV.

"Facility" means the Powder Mill State Fish Hatchery located in New Durham, New Hampshire.

"Paragraph" means a portion of this Decree identified by an Arabic numeral or a letter.

"Parties" means the United States, CLF, and Defendants.

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

5

"Section" means a portion of this Decree identified by a Roman numeral.

"State" means the State of New Hampshire.

"United States" means the United States of America, acting on behalf of EPA.

## V.    COMPLIANCE REQUIREMENTS

9.    **Best Management Practices.**  Defendants shall fully implement the Facility's best management practices plan ("BMPP") as required by its Permit and, until Defendants fully comply with the remedial steps in Paragraph 11 (Facility Modification) and achieve compliance with all limits in the Permit for three consecutive months or cease all discharges of effluent from the Facility to the Merrymeeting River, Defendants shall implement and maintain the following additional best management practices ("BMPs"):

a.    **Flow.**  Until flow meters are installed at the Facility outfalls as required by the Permit, Defendants shall continue to measure and record flow at the Facility inlet using the sharp crested weir method or direct measurement, as described in the facility's BMPP.

b.    **pH**

(1)    Defendants shall add a neutralizing agent, such as lime, to all buffer tanks in the hatch house as necessary to buffer the pH in Outfall 002, as described in the facility's BMPP.

(2)    Defendants shall add a neutralizing agent, such as lime, to the head of the Raceway Series E as necessary to buffer the pH in Outfall 001, as described in the facility's BMPP.

c.    **Phosphorus**

(1)    Defendants shall maintain the baffles located in the last raceway within Raceways Series E, F, and G, so that they effectively collect and concentrate solids before discharge to Outfall 001.

(2)    Defendants shall develop and implement procedures for routine maintenance of the earth bottom Bass Ponds (Ponds 1, 2, 3 and 4), including cleaning and preventing excessive buildup of phosphorus-laden sediments, to ensure the ponds provide effective settling without leaking or other unintended discharges and to minimize discharges of total phosphorus in soluble form from Outfall 002.

(3)    Defendants shall develop and implement procedures for routine maintenance of the earth bottom rearing ponds (*i.e.*, Show Ponds 2 and 3; and Woods Ponds 1, 2, 3, and 4), including cleaning and preventing excessive buildup of phosphorus laden sediments, to minimize discharges of total phosphorus in soluble form from Outfall 002.

(4)    Defendants shall maintain the liner installed in the clean-out ditch and Show Pond 1, so that it effectively seals and prevents any discharges from Show Pond 1, to enable that pond to be used as a closed waste containment area for Raceway Series A, B, C and D.

(5)    Defendants shall ensure the redirection of the Facility flow from the Woods Ponds to the Bass Ponds is sufficient to provide increased retention time to enhance settling and treatment.

(6)    Defendants shall continue solids removal by vacuum from Raceway Series E, F and G, as well as the circular tanks, at least once a week when fish and fish

waste are present during the months of March through November and at least once every two weeks when fish and fish waste are present during the months of December through February.

(7)      Defendants shall continue solids removal by vacuum from Raceway Series A, B, C, and D at least once a week when fish and fish waste is present during the months of March through November, and at least once every two weeks when fish and fish waste is present during the winter months of December through February.  In the event that Defendants convert Show Pond 1 to a closed waste containment area, Defendants shall flush solids from Raceway Series A, B, C and D into Show Pond 1 at least once a week when fish and fish waste is present during the months of March through November, and at least once every two weeks when fish and fish waste is present during the winter months of December through February.

(8)      Defendants shall continue to utilize circular tanks 21, 22 and 23 to contain cleaning water (as defined in the Permit, Part I.B.3) and solids for concentration and off-site disposal as described in the Facility's BMPP.

(9)      Defendants shall maintain an annual fish production target for the facility at or below 295,535 fish ("Fish Production Target").  In the event that the actual number of fish produced for stocking exceeds the Fish Production Target by more than five percent in any calendar year, the Fish Production Target shall be decreased by the number of fish stocked in excess of five percent over the Fish Production Target (the "Amended Fish Production Target"). The Amended Fish Production Target shall be effective during the next rearing cycle and shall remain in effect until it is further reduced pursuant to the following sentence or Defendants achieve full compliance with Paragraph 11(a).  If an Amended Fish Production Target is exceeded by more than five percent in any subsequent calendar year, it shall be further reduced

using the same methodology specified above.  If the Facility exceeds the applicable fish production target (i.e., the Fish Production Target or an applicable Amended Fish Production Target) either in two consecutive years, or for a total of three years whether or not consecutive, the Parties shall meet and confer to discuss a new fish production target and an alternative methodology for capping annual fish production, taking into account fish production overages that have occurred.

        d.     Until such time as Defendants have completed upgrading fish production operations and wastewater treatment necessary to meet the Permit limits, and notwithstanding Defendants' achievement of phosphorus loads at the Facility below the applicable pollutant action level set forth in Paragraph 12, below, Defendants shall be under a continuing obligation to monitor the effectiveness of the BMPs required by Paragraph 9(c), taking into consideration the  internal monitoring data, including total phosphorus trends, collected pursuant to Paragraph 10, and to make good-faith efforts to evaluate and potentially implement modified and/or additional BMPs to further reduce phosphorus levels in the Facility's discharges from Outfalls 001 and 002.  EPA and CLF may present to Defendants additional BMPs, which Defendants shall consider in good faith.

    10.    **BMP Monitoring.**  Defendants shall collect concurrent grab samples at incoming raw lake water and Outfall 002 sampling locations listed in Table 1 below, as depicted on the Facility Diagram in Appendix A, and as specified below for total phosphorus (or "TP") and orthophosphorus (or "OP") every other week.  Grab samples will be collected within the first 8 hours after the composite sampling (as defined in the Permit) start time at Outfall 002. Defendants shall document flow at Outfalls 001 and 002 pursuant to Paragraph 9(a) contemporaneously with the internal sampling described below:

a.    Sampling incoming raw lake water.  Sample incoming raw lake water at the influent to the Hatch House before it comes into contact with any Facility process;

b.    Sampling flows through Outfall 002.

(1)    Sample the influent to Show Pond 2, with at least one sample per month taken at the time when raceway cleaning operations are occurring;

(2)    Sample the effluent of Woods Ponds at Woods Pond 4 weir;

(3)    Sample the influent of Circular Tanks; and

(4)    Sample the effluent from Outfall 002 (in addition to the weekly composite sample required by the Permit).

**Table 1:  Alternating Week Sampling Schedule**

| Location | Week 1 | Week 2 |
|---|---|---|
| Outfall 001 | Composite | Composite |
| Influent (A Series) | TP Grab | TP & OP Grab |
| Show Pond 2 | | TP & OP Grab |
| Woods Pond Effluent | | TP & OP Grab |
| Circular Tank Influent | | TP & OP Grab |
| Outfall 002 | Composite | Composite, TP & OP Grab |

c.    Unless otherwise agreed in writing by EPA, Defendants shall collect samples on Wednesdays and ship them to a contract lab on Thursdays. Sample collection may be shifted by one day in either direction to accommodate state holidays without prior written authorization from EPA.

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

10

d.      Defendants shall continue internal sampling until EPA determines that Defendants have commenced full implementation of an EPA-approved Facility Sampling Program or EPA otherwise agrees in writing that such internal sampling may cease.  In order to cease such internal sampling, Defendants shall submit a written request to EPA, NHDES, and CLF for review and to EPA for approval.  This request shall include an explanation why internal sampling should not be continued, including a description of how and when Defendants met the requirements of this Paragraph.

11.     **Facility Modification**

a.      By December 31, 2025, subject to Paragraph 11(b), Defendants shall either (i) cease all discharges of effluent from the Facility to the Merrymeeting River or (ii) achieve compliance with the total phosphorus effluent limits and other requirements of the Permit by, *inter alia*, upgrading fish production facilities and operations and designing, constructing, and operating wastewater treatment systems ("Facility Modernization").

b.      By September 1, 2023, if Defendants have not obtained funding necessary to achieve permit compliance through Facility Modernization, they shall so notify EPA, NHDES, and CLF.  If, at a date prior to September 1, 2023, Defendants decide to cease all discharges from the Facility (option (i) in subsection (a)) for any reason, including lack of funding, they shall so notify EPA, NHDES, and CLF in writing, within seven days of that decision.  If Defendants have not obtained necessary funding or for any other reason determine they will be unable to achieve permit compliance through Facility Modernization, Defendants shall:

(1)      submit a plan to EPA, NHDES, and CLF for review, within two months of providing the required notice in Paragraph 11(b), above, to cease all discharges from permitted outfalls at the earlier of: (i) six months after submission of the plan, or (ii) the time that

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

all fish located at the Facility can be (1) released into a waterbody at a developmental stage that would minimize excessive fish fatalities or (2) relocated to another hatchery;

(2)      not accept any additional fish at the Facility after the date of the notice required in Paragraph 11(b) above; and

(3)      cease all discharges from the Facility and comply with applicable permit termination requirements in 40 C.F.R. § 122.64.

c.      If Defendants continue discharging effluent from the Facility at the permitted outfalls and achieve Permit compliance through Facility Modernization, Defendants shall undertake the following tasks, in accordance with the following schedule:

(1)      By December 31, 2022, Defendants shall install and operate flow meters and totalizers that will continuously monitor and record effluent flow from Outfall 001 and Outfall 002.

(2)      On November 22, 2021, Defendants contracted with HDR Engineering, Inc. to complete a feasibility study and prepare a report for upgrading fish production operations and wastewater treatment facilities at the Facility, including possible Facility modernization to improve fish rearing and solids management practices and reduce the volume of wastewater requiring treatment, to achieve compliance with the Permit effluent limits ("Feasibility Study").

(3)      By December 31, 2022, Defendants shall complete the Feasibility Study and provide a report to EPA, NHDES, and CLF on its findings and recommendations ("Feasibility Report").

(4)        Within 60 days after the Feasibility Report due date of December 31, 2022, Defendants shall select and submit to EPA, NHDES and CLF for review and to EPA for approval, its proposed alternative for Facility upgrades.

(5)        Within 60 days of EPA approval of an alternative for Hatchery upgrades, Defendants shall submit to EPA, NHDES and CLF for review and to EPA and NHDES for approval a proposed scope of work, including a schedule, for the design and construction of the approved alternative.  Defendants shall complete the design and construction of Facility upgrades approved by EPA and NHDES and achieve compliance with the total phosphorus and other effluent limits in the Permit no later than December 31, 2025.

(6)        Pursuant to the scope of work (including schedule) approved by EPA and NHDES ("Scope of Work"), Defendants shall submit to EPA, NHDES and CLF for review and to EPA and NHDES for approval a preliminary design for the approved alternative.

(7)        In accordance with the approved Scope of Work, Defendants shall submit to EPA, NHDES and CLF for review and to EPA and NHDES for approval a final design of the approved alternative.

(8)        In accordance with the approved Scope of Work, and the final design approved by EPA and NHDES, Defendants shall initiate construction of the approved preferred alternative.

(9)        By December 31, 2025, Defendants shall complete construction of the approved alternative, in accordance with the approved final design, and achieve compliance with the total phosphorus and other effluent limits in the Permit.

d.        All work shall be performed using sound engineering practices to ensure compliance with the Clean Water Act and State water quality standards.

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

12.    **Pollutant Action Level**

a.    In order to determine the effectiveness of the BMPs required under this Consent Decree, set forth below is a pollutant action level that, if exceeded, will trigger a requirement that Defendants take additional corrective actions.  Exceedance of this action level would not be considered a violation of the Permit or Consent Decree; however, if this requirement for additional corrective action were triggered, failure to conduct the required corrective action would be a violation of the Consent Decree.

b.    Unless adjusted pursuant to Paragraph 12(d), below, from the date of lodging of the Consent Decree through December 31, 2025, the total phosphorus action level shall be 40 lbs./month.  The action level shall be calculated as the sum of the monthly average phosphorus load from Outfall 001 and Outfall 002.  The composite sampling for total phosphorus required by the Permit at Outfalls 001 and 002 shall be used for purpose of determining if an action level has been exceeded.

c.    If the total phosphorus load does not exceed the specified action level, no further action is required by Defendants.  If three consecutive months of total phosphorus load exceeds the action level, then Defendants shall:

(1)    Within 24 hours of becoming aware of the third consecutive monthly exceedance, notify EPA, NHDES, and CLF of the exceedance, under Section XIII (Notices).

(2)    Within 45 days of becoming aware of the third consecutive monthly exceedance, (a) review the selection, design, installation, and implementation of the BMPs under the Consent Decree to determine what modifications to the existing BMPs and/or facility operations, additional BMPs, fish production reduction, and/or other measures are

necessary to meet the action level; and (b) prepare and submit an Action Level Compliance Report to EPA, NHDES, and CLF for review and to EPA for approval of its findings and a plan with a schedule for implementation of measures necessary to meet the action level, including without limitation additional BMPs, facility modifications, and/or reductions in fish production ("Action Level Plan").  A reduction in fish production would not require the release of fish from the Facility at a premature developmental stage that would likely result in excessive fish fatalities.

(3)     Within 14 days after EPA approval of the Action Level Compliance Report, implement the EPA-approved Action Level Plan under Paragraph 12(c)(2) above.

(4)     If the action level is not met in the three months following full implementation of the action(s) selected in the EPA-approved Action Level Plan, then within 24 hours, notify EPA, NHDES, and CLF by email of the action level exceedance.

(5)     If the action level is not met in any three consecutive months following full implementation of EPA-approved Action Level Plan, evaluate and implement additional measures (including, additional BMPs, facility modifications, and/or fish production reduction), subject to review by EPA, NHDES, and CLF and to approval by EPA, until the action level is met.

d.     In the event that any Party, based on effluent data or combined effluent and influent data for the Facility, believes that the action level and procedures set forth in Paragraphs 12(b) and (c) above are not sufficiently protective, that Party may request a modification of this Paragraph 12 to make the pollutant action level or procedures more protective of water quality pursuant to a written agreement signed by all Parties, as a

non-material modification of this Consent Decree, pursuant to Section XVI (Modification), Paragraph 63. If the Parties do not reach agreement on a modification of this Decree, the Party seeking the more protective pollutant action level may initiate dispute resolution under Section IX.

13.   **Merrymeeting River Phosphorus and Remediation Options Study**

a.      Defendants shall perform a Merrymeeting River Phosphorus Assessment ("Assessment") and Remediation Options Study ("Options Study"). The goal of the Assessment is to assess phosphorus loading, transport and dynamics in the Merrymeeting River downstream of the Facility as it relates to current water quality impairments for primary contact recreation, due to elevated levels of cyanobacteria hepatotoxic microcystins in the upper Merrymeeting River impoundments of Marsh Pond, Jones Pond and Downing Pond (the "Impoundments"). The Assessment area shall include a review of the Merrymeeting River from the headwaters at Merrymeeting Lake just above the Facility, to the outlet at Lake Winnipesaukee in Alton, New Hampshire, with special emphasis on the Impoundments. The Assessment may also include a reference site immediately upstream of the Facility. The goal of the Options Study, which will be completed after the Assessment, is to analyze data and identify potential remedial options for addressing phosphorus-related water quality standard impairments, including but not limited to impairments caused by elevated levels of cyanobacteria hepatotoxic microcystins, in the Impoundments.

b.      Key components of the Assessment shall include development of a sampling plan; data collection and analysis; identification of the sources, sinks and transport dynamics of phosphorus in the sediments and water; and evaluation of the scope and expected duration of the cyanobacteria impairment taking into account changes in the operation of the

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

Facility and the dam structures along the upper Merrymeeting River. The Options Study shall then identify and evaluate remedial options, including a preferred option.

c.    Defendants shall prepare a proposed Request for Proposals ("RFP") for a consultant to undertake the Assessment and Options Study. By June 1, 2022, Defendants shall submit a proposed RFP to EPA, CLF and NHDES for review and to EPA for approval. Within 15 days after EPA approval, Defendants shall issue the approved RFP.

d.    **Assessment.** The Assessment shall include, but not be limited to, the following components:

(1)    **Sampling Plan.** By December 31, 2022, Defendants shall submit a sampling plan ("Sampling Plan") to EPA, CLF and NHDES for review and to EPA for approval. The Sampling Plan shall include targeted monitoring to assess the sources, fate, transport and dynamics of phosphorus in the upper Merrymeeting River for a period of time necessary to adequately assess the system, to include at least one growing season, including a proposed schedule. The Sampling Plan shall address, at a minimum, the following data elements:

(a)    **Water Quality**

1)    The Sampling Plan shall assess key water quality parameters associated with phosphorus and eutrophication, which shall include (at a minimum): (i) Temperature; (ii) Dissolved oxygen; (iii) Total phosphorus and orthophosphorus; (iv) Secchi disk measurements; (v) Chlorophyll a; (vi) Cyanobacteria; and (vii) Plankton and phytoplankton.

2)    Sampling shall be at an adequate frequency, spatial distribution, and at key depths to assess water quality parameters over time, with a focus on the growing season (April to mid-October).

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

17

(b)        **Sediment**.  The Sampling Plan shall include sediment sampling to assess, at a minimum, the following parameters:

    1)   Depth of sediment accumulation within the study area;

    2)   Vertical profiles of sediment stratigraphy;

    3)   Surficial sediments analysis of total phosphorus content and fractionation;

    4)   Sediment nutrient-release in the water column during both anoxic and oxygen rich conditions (see sediment analysis for Nippo Pond in New Hampshire as a reference); and

    5)   Measurement of redox potential and oxidized microzone thickness to determine potential for nutrient flux from shallower water column areas that are not subject to stratification.

(c)        **Hydrology**.  The Sampling Plan shall include analysis of the hydrology of the Merrymeeting River, including the flushing rate of the Merrymeeting River system, retention time behind impoundments, groundwater contribution, seasonal stages, and stream flows for potential future loading estimates.

(d)        **Future Remediation**.  The Sampling Plan shall include data elements necessary to inform future phosphorus and/or cyanobacteria mitigation and remediation efforts in the Impoundments.

(2)        **Sample Collection and Analysis.**  After the Sampling Plan is approved by EPA, Defendants shall implement the approved Sampling Plan in accordance with the schedule therein.

(3)    **Final Report**.  Within 90 days of completing the final milestone in the approved Sampling Plan schedule, Defendants shall submit a final report to EPA, NHDES, and CLF.  The final report shall address at a minimum, the following:

(a)    Summary of new and existing data;

(b)    Methodology of analyses;

(c)    Determination of internal and external sources of phosphorous loading into the system, including an evaluation of the contribution of phosphorous from point sources, nonpoint sources, and the sediments;

(d)    Assessment of the fate, transport, and internal dynamics of phosphorus in the system over time, correlated to Facility infrastructure and methods implementation; and

(e)    Determination of the projected persistence of primary contact recreation impairments due to cyanobacteria hepatotoxic microcystins following implementation of Facility waste treatment improvements.

e.    **Options Study**

(1)    Defendants shall conduct a Remediation Options Study, including the identification and evaluation of options for remediation of the Impoundments (including a no-action option) and the selection of a preferred option.

(2)    The Options Study shall identify and base its recommendations on analyses of multiple factors, including, at a minimum:

(a)    Options for achieving water quality standards in the Merrymeeting River;

    (b)        Location(s) within the study area with the most effective remediation application opportunities;

    (c)        Costs of remediation(s);

    (d)        Schedule for implementation of remediation option(s);

    (e)        Possible negative impacts (e.g., ecological, hydraulic, infrastructure) of each remediation option in the treatment area;

    (f)        Possible negative impacts (e.g., ecological, hydraulic, infrastructure) of each remediation option on downstream waters;

    (g)        Any other relevant factors;

    (h)        Evaluation of the risks and benefits of taking no action (the no-action option); and

    (i)        Selection of a preferred option.

    (3)        Within 60 days after the deadline for submission of the final Assessment report, Defendants shall submit a draft scope of work, including schedule, for the Options Study to EPA, CLF and NHDES for review and to EPA for approval.

    (4)        Defendants shall complete the Options Study, in accordance with the EPA-approved scope of work and schedule.

    (5)        **Final Report**.  Within 60 days after the deadline for completion of the Options Study, Defendants shall submit a final report to EPA, NHDES, and CLF on the identification and evaluation of remediation options for the upper Merrymeeting River impoundments, including a preferred option, which may be no action or some other remedial option ("Options Study Final Report").

(6)       Upon Defendants' issuance of the Options Study Final Report under Paragraph 13(e)(5), above, EPA shall consider the options discussed in the report and any other information EPA deems relevant, including any comments from NHDES or CLF, and determine whether implementation of one or more remediation options is necessary for the Merrymeeting River to achieve State water quality standards.  If EPA determines that implementation of one or more remediation options is necessary to achieve State water quality standards, EPA shall initiate, and Defendants and CLF shall in good faith participate in, a process to seek agreement by all Parties on a plan, including a schedule, for Defendants to implement one or more such options ("Remediation Plan").  The objective of this process is for the Parties to reach agreement on a Remediation Plan to be incorporated into a modification of this Consent Decree, under Section XVI (Modification).  EPA's participation in this process does not limit its ability to seek remediation of phosphorus in the Merrymeeting River from any party, including Defendants, under the Clean Water Act, its implementing regulations, or any other legal authority.  Defendants' participation in this process does not limit its ability to challenge its liability for remediation of phosphorus in the Merrymeeting River, as provided in Paragraph 13(e)(8), below.

(7)       In addition to seeking any necessary permits or approvals under Paragraph 15, Defendants shall make best efforts to obtain funding for the agreed-upon Remediation Plan.  Such "best efforts" shall include without limitation the submission of timely and complete applications and the taking of all other actions necessary to obtain sufficient funding, including any necessary funding applications or requests to the State governor and executive council, legislature, NHDES, and/or other federal or State agencies, including without limitation requests to federal or State agencies administering or allocating funds under the

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

21

federal Infrastructure Investment and Jobs Act, Public Law No. 117-58, effective in November 2021, and, if enacted, the federal Build Back Better Act, H.R. 5376, or any amended or similar legislation.

(8)        Defendants' performance of the Remediation Options Study, participation in the Remediation Plan process, and/or agreement to a Remediation Plan shall not be construed as an actual or implied admission of liability for remediation of phosphorus in the receiving waters or sediments, and Defendants reserve all rights and defenses to any claim of such liability or action seeking to compel remediation, except as otherwise required by this Decree.  Any dispute regarding a failure to reach agreement on a Remediation Plan pursuant Paragraph 13(e)(6) above shall be exempt from the Dispute Resolution provisions in Section IX and may be brought to the Court in this action.

14.    **Approval of Deliverables**.

a.        After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA, after making reasonable efforts to consult with NHDES and CLF, will in writing: (i) approve the submission; (ii) approve the submission upon specified conditions; (iii) approve part of the submission and disapprove the remainder; or (iv) disapprove the submission.

b.        If EPA approves the submission pursuant to Paragraph 14(a)(i), Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If EPA provides conditional approval or approval only in part pursuant to Paragraph 14(a)(ii) or (iii), Defendants shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

portions, subject to Defendants' rights to dispute only the specified conditions or the disapproved portions, under Section IX (Dispute Resolution).

c.    If EPA disapproves the submission in whole or in part pursuant to Paragraph 14(a)(iii) or (iv), Defendants shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with Paragraphs 14(a) and (b).  If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with Paragraph 14(b).

d.    If EPA disapproves in whole or in part a resubmitted plan, report, or other item, or portion thereof, EPA may again require Defendants to correct any deficiencies, in accordance with this Paragraph, or may itself correct any deficiencies subject to Defendants' right to invoke Dispute Resolution under Section IX and the right of EPA stipulated penalties as provided in Section VII.

e.    If Defendants elect to invoke Dispute Resolution as set forth in Section IX, Defendants shall do so by sending a Notice of Dispute in accordance with that Section within 15 Days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

15.    **Permits**.  Where any compliance obligation under this Section requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendants may seek relief under the provisions of Section VIII (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have

submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

## VI.    REPORTING REQUIREMENTS

16.    Defendants shall submit the following reports to EPA, DOJ, NHDES, and CLF at the addresses set forth in Section XIII (Notices):

a.    Quarterly Reports.  Until the Facility Modification requirements in Paragraph 11(a) of this Consent Decree are completed, Defendant shall submit a report on BMP implementation every three months, with such reports due on the 15th of the month following the end of three-month reporting period.  The first quarterly report shall cover the months of November, December, and January and shall be due February 15, 2022.  The report shall include, but not be limited to, the following items:

(1)    Update on the construction of projects and Permit compliance;

(2)    Update on the installment of outfall flow meters;

(3)    Summary of internal Phosphorus sampling data, collected under Paragraph 9(c), with supporting contract lab reports, and monthly average total phosphorus loads (in lbs./month);

(4)    Summary of the weekly data for total phosphorus, with supporting contract lab reports;

(5)    The amount of food, by weight or volume, fed to fish during the reporting period;

(6)    The number and biomass of fish present at the Facility during the reporting period;

(7)     Any modifications to BMPs and/or Facility operations that could impact Phosphorus concentrations;

(8)     Any optimization of BMPs based on sample data;

(9)     Any observational notes on solids collection and removal in raceways and settling ponds; and

(10)     Cleaning schedules and records.

b.     Semi-Annual Reports.

(1)     By January 31st and July 31st of each year after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XVII, Defendants shall submit a semi-annual report for the preceding six months ("Semi-Annual Report") that includes: (i) completion of any BMP under Paragraph 9; (ii) the status of any facility modification under Paragraph 11; (iii) a progress report on implementation of the EPA-approved Sampling Plan and Options Study under Paragraph 13; (iv) problems encountered or anticipated, together with implemented or proposed solutions; and (v) status of any permit or funding applications.

(2)     The Semi-Annual Report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

c.     Notification of Violation.  If Defendants violate, or have reason to believe that they may violate, any requirement of this Consent Decree, Defendants shall notify DOJ, EPA, NHDES and CLF of such violation and its likely duration, in writing, within ten business days of the Day any Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize

such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report.  Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day any Defendant becomes aware of the cause of the violation. Nothing in this Section (Reporting Requirements) relieves Defendant of its obligation to provide the notice required by Section VIII (Force Majeure).

17.    Emergency Notifications.  Whenever any violation of this Consent Decree, the Permit, or any other applicable permits, or any other event affecting a Defendant's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA and NHDES by telephoning and emailing Solanch Pastrana-Del Valle (Phone: 617-918-1746; Email: pastrana-del-valle.solanch@epa.gov) and Teresa B. Ptak (Phone: 603-271-1497; Email: teresa.b.ptak@des.nh.gov), respectively, as soon as possible, but no later than 24 hours after any Defendant first knew of the violation or event. This procedure is in addition to the requirements in Paragraph 16.

18.    Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

19.    This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

20.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligation required by the Act or implementing regulations, or the Permit, or any other federal, state, or local law, regulation, permit, or other requirement.

21.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.   STIPULATED PENALTIES

22.     Unless the noncompliance is excused under Section VIII (Force Majeure), Defendants are liable to the United States for stipulated penalties as provided in the following two Paragraphs.

23.     **Compliance Requirements.**  For every Day that Defendants fail to timely meet the requirements of Section V (Compliance Requirements) of this Consent Decree, including but not limited to, submitting an approvable plan, schedule, report, or other item, other than a report required by Section VI (Reporting Requirements), or fail to implement remedial requirements in a plan, schedule, report, or other item approved by EPA, Defendants shall pay a stipulated penalty as follows:

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $3,000 | 31st Day and beyond |

24.     **Reporting Requirements**.  The following stipulated penalties shall accrue per violation per Day for each violation by Defendants of Section VI (Reporting Requirements):

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $750 | 1st through 14th Day |
| $1,000 | 15th through 30th Day |
| $1,500 | 31st Day and beyond |

25.     **Obligations Prior to the Effective Date**.  Upon the Effective Date, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to any and all violations that have occurred prior to the Effective Date, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

26.     Stipulated penalties shall continue to accrue as provided Paragraph 23 and 24 during any Dispute Resolution under Section IX, but need not be paid until the following:

        a.      If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

        b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in Paragraph 26(c), below.

        c.      If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

27.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.

28.     The payment of penalties and interest, if any, shall not alter in any way Defendants' obligation to complete the performance of the requirements of this Consent Decree.

29.     **Accrual of Penalties**.  Stipulated penalties accrue from the date performance is due, or the day a noncompliance occurs, whichever is applicable, until the date the requirement is completed or the final day of the correction of the noncompliance.  Nothing in this Decree prevents the simultaneous accrual of separate penalties for separate violations of this Decree. Stipulated penalties accrue regardless of whether Defendants have been notified of their noncompliance, and regardless of whether Defendants have initiated dispute resolution under Section IX, provided, however, that no penalties will accrue as follows:

    a.     with respect to a submission that EPA subsequently determines is deficient under Paragraph 14 (Approval of Deliverables), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Defendants of any deficiency;

    b.     with respect to a matter that is the subject of dispute resolution under Section IX, during the period, if any, beginning on the 21st day after the later of the date that the United States receives Defendants' Statement of Position or CLF's Statement of Position is received until the date the United States issues its Statement of Position under Paragraphs 40 and 41 (Formal Dispute Resolution); or

    c.     with respect to a matter that is the subject of judicial review by the Court under Paragraph 42 (Judicial Dispute Resolution), during the period, if any, beginning on the

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.

30.   **Demand and Payment of Stipulated Penalties**.   EPA may send Defendants a demand for stipulated penalties.  The demand will include a description of the noncompliance and will specify the amount of the stipulated penalties owed.  Defendants may initiate dispute resolution under Section IX within 30 days after receipt of the demand.  Defendants shall pay the amount demanded or, if they initiate dispute resolution, the uncontested portion of the amount demanded, within 30 days after receipt of the demand.  Defendants shall pay the contested portion of the penalties determined to be owed, if any, within 30 days after the resolution of the dispute.  Each payment for (a) the uncontested penalty demand or uncontested portion, if late; and (b) the contested portion of the penalty demand determined to be owed, if any, must include an additional amount for interest accrued from the date of receipt of the demand through the date of payment.  Defendants shall make payment at https://www.pay.gov using the link for "EPA Miscellaneous Payments Cincinnati Finance Center," including references to the DJ number listed in Paragraph 59 and the purpose of the payment.  Defendants shall send a notice of this payment to DOJ and EPA, in accordance with Section XIII (Notices).  The payment of stipulated penalties and interest, if any, does not alter any obligation by Defendants under the Decree.

31.   Nothing in this Decree limits the authority of the United States (a) to seek any remedy otherwise provided by law for Defendants' failure to pay stipulated penalties or interest; or (b) to seek any other remedies or sanctions available by virtue of Defendants' noncompliance with this Decree or the statutes and regulations upon which it is based.

32.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued under this Decree.

## VIII.   FORCE MAJEURE

33.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by a Defendant, or of a Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include any Defendant's financial inability to perform any obligation under this Consent Decree.

34.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice by telephone to Solanch Pastrana-Del Valle at 617- 918-1746 , and by email at pastrana-del-valle.solanch@epa.gov, within 48 hours of when any Defendant first knew that the event might cause a delay.  Within seven Days thereafter, Defendants shall provide in writing to EPA and CLF an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

31

Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which any Defendant, any entity controlled by a Defendant, or a Defendant's contractors knew or should have known.

35. If EPA, after reasonable efforts to consult with CLF, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after reasonable efforts to consult with CLF, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

36. If EPA, after reasonable efforts to consult with CLF, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendants in writing of its decision.

37. If Defendants elect to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of this Section. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.   DISPUTE RESOLUTION

38.   Unless otherwise expressly provided in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

39.   Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants or CLF send(s) DOJ and EPA a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 10 Days after the conclusion of the informal negotiation period, Defendants or CLF invoke(s) formal dispute resolution procedures as set forth below.

40.   Formal Dispute Resolution.  Defendants or CLF shall invoke formal dispute resolution procedures, within the time period provided in Paragraph 39, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting

Defendants' or CLF's position and any supporting documentation relied upon by Defendants or CLF.

41.     The United States will send Defendants and CLF its Statement of Position within 45 Days of receipt of Defendant's or CLF's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position is binding on Defendants and CLF, unless Defendants or CLF file a motion for judicial review of the dispute in accordance with the following Paragraph.

42.     Judicial Dispute Resolution.  Defendants or CLF may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute.  The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendants' or CLF's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

43.     The United States shall respond to Defendants' or CLF's motion within the time period allowed by the Local Rules of this Court.  Defendants or CLF may file a reply memorandum, to the extent permitted by the Local Rules.

44.     Standard of Review

a.     Disputes Concerning Matters Accorded Record Review.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 40 (Formal

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

Dispute Resolution) regarding the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree, regarding the adequacy of the performance of work undertaken pursuant to this Consent Decree, or that is accorded review on the administrative record under applicable principles of administrative law, Defendants or CLF shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.    Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 40 (Formal Dispute Resolution), Defendants or CLF shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree set forth in Section III (Objectives).

c.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants or CLF under this Consent Decree, unless and until final resolution of the dispute so provides.

## X.    INFORMATION COLLECTION AND RETENTION

45.    The United States, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information obtained by the United States in connection with this Consent Decree;

c.    obtain samples and, upon request, splits of any samples taken by any Defendant or its representatives, contractors, or consultants;

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

      d.      obtain documentary evidence, including photographs and similar data; and

      e.      assess any Defendants' compliance with this Consent Decree.

46.     Upon request, Defendants shall provide EPA or their authorized representatives splits of any samples taken by any Defendant.  Upon request, EPA shall provide Defendants splits of any samples taken by EPA.

47.     Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their  contractors' or agents' possession or control, and that relate in any manner to a Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary State or agency policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

48.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA.

49.     Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendants assert such a privilege, they shall provide the following:  (a) the title of the

document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

50.    A Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that a Defendant seeks to protect as CBI, that Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

51.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.    EFFECT OF SETTLEMENT / RESERVATION OF RIGHTS

52.    This Consent Decree resolves the civil claims of the United States and CLF for the violations alleged in their Complaints filed in this action through the date of lodging, subject to the reservations in this Section below.

53.    The United States and CLF reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States or CLF to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

conditions, except as expressly specified in Paragraph 52.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Facility, whether related to the violations addressed in this Consent Decree or otherwise.  The United States also reserves its rights to seek, in this action or a subsequently filed action, remediation of downstream waters or sediments affected by discharges of pollutants from the Facility, under Sections 309 and 504 of the Act, 33 U.S.C. §§ 1319, 1364, regulations promulgated thereunder, or any other applicable authority, to the extent that such remediation is not required by this Consent Decree or any agreement reached by the Parties under Paragraph 13(e) or to the extent agreement is not reached under Paragraph 13(e).

54.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief, or in any subsequent proceeding initiated by CLF under Section 505 of the Act, 33 U.S.C. § 1365, relating to the Facility or a Defendant's violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or CLF in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 52.

55.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and a Defendant's compliance with this Consent Decree shall be no defense to any

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and CLF do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that a Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 33 U.S.C. § 1251, *et seq.*, the Permit, or with any other provisions of federal, State, or local laws, regulations, or permits.

56.     This Consent Decree does not limit or affect the rights of Defendants, the United States, or CLF against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against any Defendant, except as otherwise provided by law.

57.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.    COSTS

58.     The Parties shall bear their own costs of this action, including attorneys' fees, except that CLF reserves its right to seek an award of its reasonable litigation costs from Defendants pursuant to 33 U.S.C. § 1365(d), and the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of any stipulated penalties due but not paid by Defendants.

## XIII.   NOTICES

59.     All agreements, approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, waivers, and requests specified in this Decree must be in writing unless otherwise specified.  Whenever a notice is required to be given or a report or other document is required to be sent by one Party to another under this Decree, it must be sent as specified below.  All notices under this Section are effective upon receipt, unless otherwise

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

specified.  In the case of emailed notices, there is a rebuttable presumption that such notices are received on the same day that they are sent.  Any Party may change the method, person, or address applicable to it by providing notice of such change to all Parties.

<table>
<tr><td>As to DOJ:</td><td><em>via email to</em>:</td></tr>
</table>

eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-1-1-12466

As to EPA:   *via email to*:

Tonia Bandrowicz, Sr. Enf. Counsel
bandrowicz.toni@epa.gov

Solanch Pastrana-Del Valle, Environmental Engineer
pastrana-del-valle.solanch@epa.gov

As to CLF:   *via email to*:

Tom Irwin, Vice President for New Hampshire
tirwin@clf.org

As to NHDES:   *via email to*:

Teresa B. Ptak, NPDES Permits & Compliance
teresa.b.ptak@des.nh.gov

As to Defendants:   *via email to*:

Scott Mason, Executive Director
director@wildlife.nh.gov

## XIV.   EFFECTIVE DATE

60.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.    RETENTION OF JURISDICTION

61.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

## XVI.    MODIFICATION

62.    The terms of this Consent Decree, including any attached appendices and any submitted and approved deliverables, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

63.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 44, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.  TERMINATION

64.    After Defendants (1) have completed the requirements of Section V (Compliance Requirements), including completion of the process initiated by EPA under Paragraph 13(e)(6) and any litigation including related appeals; (2) have thereafter maintained for a period of one year satisfactory compliance with this Consent Decree, the Permit, and any agreement of the Parties or other resolution reached through the process initiated under Paragraph 13(e)(6); and (3) have paid any accrued stipulated penalties as required by this Consent Decree or any agreement or other resolution under Paragraph 13(e)(6), Defendants may serve upon the United

States and CLF a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

65.     Following receipt by the United States and CLF of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States, after consultation with CLF, agrees that the Decree may be terminated, and CLF agrees or CLF invokes dispute resolution pursuant to Paragraph 66 and does not prevail, then the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

66.     If the United States after consultation with CLF does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section IX.  If the United States agrees that the Decree may be terminated, but CLF does not so agree, CLF may invoke dispute resolution under Section IX.

## XVIII. PUBLIC PARTICIPATION

67.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants and CLF consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants and CLF in writing that it no longer supports entry of the Decree.

## XIX.   SIGNATORIES / SERVICE

68.     Each undersigned representative of Defendants, CLF, EPA, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice identified on the DOJ signature page below, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

69.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendant need not file an answer to the U.S. Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX.   INTEGRATION

70.     This Consent Decree, including deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, concerning the subject matter of the Decree herein.

## XXI.   FINAL JUDGMENT

71.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, CLF, and Defendants, except that CLF reserves the right to petition the Court for an award of its reasonable litigation costs from Defendants pursuant to 33 U.S.C. § 1365(d).

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

43

## XXII.    26 U.S.C. § 162(f)(2)(A)(ii) IDENTIFICATION

72.    For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Paragraph 5 (provision of Decree to others), Section V (Compliance Requirements), Paragraphs 16 and 18 (non-emergency reporting requirements), and Paragraphs 46–49 (information collection and retention), is restitution, remediation, or required to come into compliance with law.

## XXIII. APPENDIX

73.    The following Appendix is attached to and part of this Consent Decree: "Appendix A" (Facility Diagram).

Dated entered this 17th day of ___November___ , 2022

_/s/Paul Barbadoro_____
Paul Barbadoro
UNITED STATES DISTRICT JUDGE

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

44

FOR THE UNITED STATES OF AMERICA:

Respectfully submitted,

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division


Dated:  September 7, 2022

*David Weigert*
DAVID LAUFMAN WEIGERT
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Phone:  (202) 353-5592
Email:  david.weigert@usdoj.gov

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

CARL
DIERKER

Digitally signed by
CARL DIERKER
Date: 2022.05.26
14:25:28 -04'00'

CARL DIERKER
Regional Counsel
U.S. Environmental Protection Agency, Region 1
5 Post Office Square
Boston, MA 02109

OF COUNSEL:

TONIA BANDROWICZ
Senior Enforcement Counsel

MICHAEL KNAPP
Senior Enforcement Counsel
U.S. Environmental Protection Agency, Region 1
5 Post Office Square
Boston, MA 02109

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

46

FOR CONSERVATION LAW FOUNDATION

Dated: 5/25/22

THOMAS F. IRWIN (N.H. Bar No.11302)
Vice President, New Hampshire
Conservation Law Foundation
27 North Main Street
Concord, NH 03301
Phone: (603) 225-3060
Email: tirwin@clf.org

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

FOR DEFENDANTS:

THE STATE OF NEW HAMPSHIRE;
THE NEW HAMPSHIRE FISH AND GAME
DEPARTMENT;
SCOTT MASON, in his official capacity as
EXECUTIVE DIRECTOR of the NEW HAMPSHIRE
FISH AND GAME DEPARTMENT; and
JOHN CAVENEY, PAUL DEBOW, ALBERT J.
DEROSA, RAY GREEN, CHRISTOPHER
HODGDON, MEGGAN HODGSON, MARC
LACHANCE, PAUL G. MCINNIS, SUSAN PRICE,
ERIC G. STOHL, and BRUCE TEMPLE, in their
official capacities as the COMMISSIONERS of the
NEW HAMPSHIRE FISH AND GAME
COMMISSION

By their Attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Dated: 5/25/22

Christopher G. Aslin, Bar #18285
Senior Assistant Attorney General
Environmental Protection Bureau
33 Capitol Street
Concord, NH  03301-6397
(603) 271-3679
christopher.aslin@doj.nh.gov

Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996

**APPENDIX A**
**Facility Diagram**



Consent Decree in *United States et al. v. New Hampshire Fish & Game Dept. et al.* (D.N.H.), Civil No. 1:18-cv-00996