### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

_____

Conservation Law Foundation, Inc.,

     Plaintiff,

v.

     Civil Action No. 1:18-cv-00996-PB

SCOTT MASON, in his official capacity as
Executive Director of the New Hampshire
Fish and Game Department, *et al.*,

     Defendants.
_____

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS OF LITIGATION

### INTRODUCTION

For seventy-five years, the Powder Mill State Fish Hatchery ("Facility") has been discharging fish waste and pollution into the Merrymeeting River, which flows into Lake Winnipesaukee's Alton Bay. Located immediately downstream of the pristine Merrymeeting Lake, the Facility – the largest in the state's hatchery system – has been violating the Clean Water Act for at least ten years, causing "some of the highest" phosphorus concentrations "ever measured" by the New Hampshire Department of Environmental Services ("NHDES").[1] The Facility's phosphorus pollution has severely degraded the River's water quality and caused toxic cyanobacteria blooms. Despite these violations of state water quality standards, and even with

_____

[1] Ted Diers, assistant director at NHDES, quoted in the New Hampshire Bulletin. Amanda Gokee, State's fish hatcheries are about to get a boost; some environmentalists say that's a problem. New Hampshire Bulletin, May 22, 2022.

warnings against recreational use of the River's ponds issued by NHDES in 2015, 2016, 2017, and 2018,[2] government regulators took no enforcement action.

In 2018, to address the concerns of local residents and Conservation Law Foundation ("CLF") members, CLF filed this lawsuit to protect the Merrymeeting River and its downstream waters. Two years into the suit and amid increased public outcry about the Facility's pollution, the United States Environmental Protection Agency ("EPA") issued a new National Pollutant Discharge Elimination System ("NPDES") permit establishing more stringent effluent limitations to address the pollutant of greatest concern: phosphorus. But the permit could only restore the River and prevent violations of New Hampshire's state water quality standards if its effluent limitations were enforced.

For the next eight months, CLF stayed the course, fending off dispositive motions and prevailing on the issue of pH violations in the Court's August 27, 2020 order. Thereafter, following the Court's suggestion at the April 21, 2021 motion hearing, EPA joined CLF and the Defendants in a negotiations process spanning twelve months, ultimately leading to EPA joining this lawsuit for enforcement purposes as a plaintiff and intervener and to the entry of an enforceable, court-approved Consent Decree. The Consent Decree requires the Defendants to comply with their NPDES permit by constructing a new wastewater treatment facility, to implement interim measures to reduce pollution, to assess contamination in the Merrymeeting River, and to consider options for the River's remediation.

Absent this lawsuit initiated and prosecuted by CLF, there would be no Court-ordered Consent Decree – which CLF helped shape through its active engagement in settlement

---

[2] Cyanobacteria advisories were posted for Downing Pond in August 2015 and July 2016. *See* ECF No. 1 at 18. In 2017, cyanobacteria advisories were posted for Marsh Pond and Downing Pond. *Id.* Cyanobacteria advisories were posted for Jones Pond from July 20, 2018 until September 25, 2018, and for Marsh Pond from July 27, 2018 until October 5, 2018. *See* ECF No. 47-23 (Bloom Advisories).

negotiations and by addressing numerous issues related to the Facility and its impacts – requiring actions and measures designed to significantly reduce pollution in the Merrymeeting River and achieve compliance with the Clean Water Act. Having achieved this result, CLF now seeks to recover its reasonably incurred attorney fees and costs pursuant to 33 U.S.C. § 1365(d).

## PRELIMINARY STATEMENT

Through the Court's August 27, 2020 Order and November 17, 2022 Order approving and entering the Consent Decree, CLF has substantially prevailed in this action against Scott Mason and the eleven named commissioners of the New Hampshire Fish and Game Department in their official capacities (collectively "Defendants") regarding the Facility's violations of the Clean Water Act. CLF now seeks recovery of its fees and expenses pursuant to Federal Rule of Civil Procedure 54(d) and Section 505(d) of the Clean Water Act.[3] Such fees and expenses were reasonably incurred in connection with: a) CLF's initial investigation of Defendants' Clean Water Act violations in 2018; b) protracted litigation from December 2018 through April 2021, including four motions to dismiss (all of which were denied by the Court), five motions for summary judgment (three filed by CLF and two filed by the Defendants), thirteen motion hearings or conferences, fact and expert discovery (including seven depositions and a Rule 34 site visit), and two motions *in limine*; c) global settlement negotiations with Defendants and EPA between May 27, 2021 and April 13, 2022; and d) this Motion for Attorneys' Fees and Costs of Litigation. In addition to these attorney fees, CLF also seeks to recover reasonably incurred costs, including costs associated with expert witnesses.

---

[3] The instant application is timely under Rule 54(d)(2)(b)(i), which authorizes a motion for fees and expenses within fourteen days of entry of final judgment. The Court approved and entered the Consent Decree on November 17, 2022.

For the reasons discussed below, CLF's application for $538,774 in attorneys' fees and $37,465.99 in costs should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

I.    **CLF'S PROSECUTION OF ITS LAWSUIT, INCLUDING SETTLEMENT DISCUSSIONS BETWEEN CLF AND DEFENDANTS AND GLOBAL SETTLEMENT NEGOTIATIONS AMONG CLF, DEFENDANTS, AND EPA**

The Pleadings, Including the Complaint and First Amended Complaint, and First and Second Motions to Dismiss (August 2, 2018 – October 9, 2019)

CLF initiated this citizen suit under Section 505 of the Clean Water Act on October 31, 2018, 60 days after sending to the Defendants, EPA, and NHDES the statutorily required notice of its intent to sue the Defendants on August 2, 2018. CLF's complaint alleged Defendants' violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1331(a), and the Defendants' EPA-issued NPDES Permit No. NH0000710.[4] ECF No. 1 (Compl.). CLF alleged that Defendants' discharge of pollutants (including phosphorus, solids, and acidic wastewater) was degrading the health of the Merrymeeting River, causing eutrophic conditions and outbreaks of cyanobacteria which threatened the health of, and enjoyment of the River by, CLF members.

On February 11, 2019, the Defendants filed their first motion to dismiss, to which CLF objected on March 7, 2019. ECF Nos. 8 (Mot. to Dismiss), 12 (Obj. to Mot. to Dismiss). On March 4, 2019, CLF moved to amend its complaint to provide updated factual assertions and to seek additional injunctive relief as a matter of course. ECF No. 11 (Mot. to Am.). Defendants objected to CLF's Motion to Amend on March 15, 2019, and on March 22, 2019, CLF filed a Motion for Leave to Reply and the Reply. ECF Nos. 15 (Obj. to Mot. to Am.), 19 (Mot. for Leave). On March 25, 2019, the Court granted CLF's Motion to Amend the Complaint and

---

[4] Over the course of this litigation, Defendants' Hatchery operated under two NPDES Permits. The first, issued in 2011, was superseded by the current permit which took effect on January 1, 2021.

denied the first motion to dismiss. On March 27, 2019, CLF filed its First Amended Complaint. ECF No. 20 (First Am. Compl.).

On July 24, 2019, the Defendants filed their second motion to dismiss. ECF No. 27 (Mot. to Dismiss). CLF objected to this second motion to dismiss on August 7, 2019 and, on August 8, 2019, voluntarily dismissed four of the individual named defendants. ECF Nos. 28 (Obj. to Mot. to Dismiss), 29 (Notice Vol. Dismissal). Following the Defendants' Reply, on August 19, 2019 CLF filed a Surreply. ECF Nos. 30 (Reply), 32 (Surreply). On September 25, 2019, CLF filed a Notice of Supplemental Authority to support its Objection to Defendants' second motion to dismiss. ECF No. 37 (Notice Suppl. Auth.).

On October 8, 2019, CLF and the Defendants appeared before the Court for a hearing on the Defendants' second Partial Motion to Dismiss. During the hearing, the Court denied Defendants' motion.

<u>Settlement Negotiations (February 5, 2019 – March 3, 2020)</u>

Between February 5, 2019 and November 13, 2019, CLF met with the Defendants on five separate occasions (February 5, 2019; March 29, 2019; July 30, 2019; October 4, 2019; and November 13, 2019) either at Defendants' counsel's office or at CLF's office in Concord, New Hampshire, to discuss potential settlement of the case. In between the in-person settlement meetings, CLF and the Defendants continued negotiations via telephone and email. Dr. Kenneth Wagner, a third expert retained by CLF with expertise in water resources management, attended the October 4, 2019 settlement meeting. Dr. Wagner provided cost estimates and mediation options for the treatment of phosphorus-loaded sediment in the Merrymeeting River.

On March 3, 2020, CLF and the Defendants engaged in an all-day mediation before Magistrate Judge Andrea Johnstone.

<u>Fact and Expert Discovery (March 18, 2019 - November 15, 2019)</u>

This case involved complicated scientific and technical information, requiring lengthy fact and expert discovery. The Parties exchanged at least 12,000 pages of documents: the Defendants produced (and CLF reviewed) more than 8,200 pages of documents, and CLF produced more than 3,800 pages.

CLF deposed three of the Defendants' staff members including Matthew Pehrson, a technician employed by the Fish & Game Department and disclosed by Defendants' as their sole expert witness. Mr. Pehrson was deposed twice – once as a fact witness and once as an expert witness.

CLF defended depositions of two CLF standing witnesses and eyewitnesses.

CLF retained two testifying experts: Dr. Wane Schneiter, a wastewater engineer with expertise in the control of phosphorus and nitrogen pollution, and Dr. Jack Rensel, an aquatic biologist with expertise in the effects of phosphorus pollution on downstream waters. CLF submitted expert reports and supplemental expert reports for each expert and defended their depositions. CLF and Dr. Schneiter traveled to New Durham, New Hampshire to conduct a site visit of the Facility, and Dr. Rensel travelled to Boston to testify at an in-person deposition.

<u>First and Second Summary Judgment Briefings (November 27, 2019 – August 27, 2020)</u>

On November 27, 2019, the Parties filed cross-Motions for Summary Judgment (CLF's motion was refiled on December 3, 2019 as ECF No. 47 to correct a filing error). ECF Nos. 43 (Pl.'s Mot. for Summ. J.), 44 (Defs.' Mot. for Summ. J.). On January 3, 2020, CLF and the Defendants filed respective Opposition Motions. ECF Nos. 53 (Defs.' Obj. to Pl.'s Mot. for Summ. J.), 54 (Pl.'s Obj. to Defs.' Mot for Summ. J.) (refiled as ECF No. 56 on January 7, 2020 to correct a filing error). On January 10, 2020, CLF and the Defendants filed respective Replies.

ECF Nos. 57 (Defs.' Reply), 58 (Pl.'s Reply). On January 15, 2020, CLF filed a Surreply. ECF No. 59 (Surreply).

On March 25, 2020, the Parties attended a status conference before the Court regarding the cross Motions for Summary Judgment. On April 6, 2020, the Court issued an Order denying both motions without prejudice with respect to the "direct discharge" claims pending issuance of the 2021 Permit. ECF No. 65 (Order). The Order also compelled Plaintiff to file a supplemental memorandum regarding any impact the forthcoming *County of Maui v. Hawaii Wildlife Fund* decision from the U.S. Supreme Court may have on the Court's analysis of the "indirect" or Sediment Discharge claims. *Id.* On April 20, 2020, CLF filed the requested supplemental memorandum. ECF No. 66.

On April 27, 2020, CLF filed a Motion for Clarification, seeking an order from the Court confirming, among other things, that the proceedings on CLF's "direct discharge" claims were not stayed pending EPA's issuance of the 2021 Permit. ECF No. 67 (Mot. for Clarification). Following the Defendants' Objection to CLF's Motion for Clarification, on May 18, 2020, CLF moved for leave to file a Reply, providing its Reply therewith. ECF No. 70 (Mot. for Leave).

Following a May 26, 2020 telephonic hearing, the Court issued a new briefing schedule and requested consolidated summary judgment briefing from both parties. ECF No. 71. On June 2, 2020, the Parties filed cross consolidated motions for summary judgment. ECF Nos. 72 (Pl.'s Mot. for Summ. J.), 73 (Defs.' Mot. for Summ. J.). On June 16, 2020, CLF filed a Consolidated Memorandum of Law in Support of its Motion for Summary Judgment and Objection to Defendants' Partial Cross Motion for Summary Judgment. ECF No. 75. Defendants filed their Consolidated Memorandum on June 30, 2020, and CLF filed its Reply on July 7, 2020. ECF Nos. 78 (Defs.' Mem.), 80 (Reply).

On July 29, 2020, the Parties appeared before the Court (virtually) for a hearing on the cross motions for summary judgment. On August 27, 2020, the Court issued an order granting summary judgment to CLF for the pH claims and granting summary judgment to Defendants for the formaldehyde and Sediment Discharge claims. ECF No. 85 (Aug. 27, 2020 Order). The August 27 Order specifically ruled that the Defendants had violated the pH limit in the 2011 Permit and required Defendants to "devise and implement a system" that would bring them into compliance with the pH limit within 90 days.

<u>Evidentiary Motions and Motions *in Limine* (November 27, 2019 – January 4, 2021)</u>

On September 24, 2019, CLF deposed Matthew Pehrson, a Fish & Game Department employee, during fact discovery. On October 4, 2019, Defendants disclosed Matthew Pehrson as a Non-Retained Expert and stated "it is possible that testimony by Mr. Pehrson may constitute opinion testimony . . . [and] may present expert testimony at trial." ECF No. 42-2. On November 27, 2019, CLF filed a motion to Exclude the Opinion Testimony of Matthew Pehrson. ECF No. 42 (Mot. to Exclude). Following the Defendants' Objection, on January 4, 2020, CLF filed a Reply. ECF Nos. 49 (Obj. to Mot. to Exclude), 55 (Reply). On October 9, 2020, after CLF deposed Mr. Pehrson as Defendants' expert witness, CLF filed a Motion *in Limine* to Exclude the Non-lay Opinion Testimony of Matthew Pehrson. ECF No. 88 (Mot. in Lim.). The Motion *in Limine* was based on Mr. Pehrson's lack of qualifications to offer expert testimony in the case. *Id*.

<u>Briefing Following the Issuance of the 2021 NPDES Permit (Including the Third and Fourth Motions to Dismiss, the Second Amended Complaint, and CLF's Third Summary Judgment Motion) (October 13, 2020 – April 21, 2021)</u>

On October 13, 2020, the EPA issued a new NPDES permit for the Facility with an effective date of January 1, 2021 (the "2021 Permit"). ECF No. 99-3 (2021 Permit). Defendants

responded on November 4, 2020 to the 2021 Permit by filing their third motion to dismiss, claiming that the 2021 Permit mooted CLF's First Amended Complaint. ECF No 94 (Mot. to Dismiss). On November 18, 2020, CLF objected to the motion to dismiss. ECF No. 95 (Obj. to Mot. to Dismiss). Following the Defendants' Reply, on December 7, 2020 CLF filed its Surreply. ECF Nos. 96 (Reply), 97 (Surreply).

At the January 28, 2021 hearing on the Defendants' third motion to dismiss, the Court denied the Defendants' motion and ordered that CLF amend its complaint within fourteen days to restate its claims with reference to the 2021 Permit. ECF No. 101 (Jan. 28 Hearing Transcript). On February 10, 2021, CLF filed its Second Amended Complaint alleging eight counts of Clean Water Act violations. ECF No. 99 at 27-34 (Second Am. Compl.).

On February 19, 2021, CLF filed its third Motion for Summary Judgment, alleging violations of the 2021 Permit. ECF No. 100 (Pl.'s Mot. for Summ. J.). The Defendants filed their objection on March 22, 2021, to which CLF replied on March 29, 2021. ECF Nos. 109, 110.

On February 23, 2021, the Defendants filed their fourth motion to dismiss, claiming that the Clean Water Act required CLF to provide 60-days' notice before filing the Second Amended Complaint – a claim which the Defendants failed to raise at the January 28 hearing. ECF No. 102 (Mot. to Dismiss). On March 9, 2021, CLF filed its objection to Defendants' fourth motion to dismiss; Defendants replied on March 16, 2021. ECF No. 105, 108. On April 21, 2021, the Parties appeared before the Court (virtually) for a hearing on the Defendants' motion, which the Court denied. In addition to denying the Defendants' fourth motion to dismiss, the Court directed the clerk to schedule a conference with EPA representatives and the Parties.

<u>Global Settlement Negotiations (May 27, 2021 – April 13, 2022)</u>

On April 22, 2021, CLF and the Defendants began discussions with EPA about this case and the Facility. Representatives from EPA attended an April 29, 2021 status conference before the Court to discuss efforts to reach a global settlement. Thereafter, starting on May 12, 2021, CLF, the Defendants, and EPA met twenty-three times, approximately every two weeks. Fred Quimby, a member of CLF and the New Durham Cyanobacteria Mitigation Steering Committee, attended several settlement meetings. Finally on April 13, 2022, the Parties came to an agreement on the terms of the settlement in the form of a Consent Decree. While the Parties did not reach agreement as to the payment of Plaintiff's reasonable litigation costs, CLF reserved its right in the Consent Decree to seek such an award from the Defendants. ECF No. 130 (Consent Decree) at 39.

## II. EPA'S INTERVENTION AS CO-PLAINTIFF AND ENTRY OF THE CONSENT DECREE

On September 7, 2022, Plaintiff-Intervenor, the United States of America, on behalf of the EPA, filed a motion to intervene in CLF's citizen suit. ECF No. 125 (Pl. Intervenor's Mot. Intervene). The Court granted the United States' motion on September 8, 2022, and on that date the United States filed a complaint alleging that Defendants violated and continue to violate Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). ECF Nos. 126 (Order Granting Mot. Intervene), 127 (Pl. Intervenor's Compl.). Specifically, the United States alleged that discharges from the Facility contain levels of phosphorus and pH high enough to violate both narrative (water quality standard-based) and numeric effluent limits. *Id.* at 5. The United States further alleged that pollution from the Facility has contaminated the Merrymeeting River and its ponds, causing "eutrophication and the growth of toxic cyanobacteria" which "pose imminent and substantial risks to human health and welfare." *Id.* at 6.

On the same date that it filed its Complaint, the United States, on behalf of EPA, lodged with the Court the Consent Decree negotiated by CLF, the Defendants, and EPA between May 2021 and April 2022 and executed by all three parties.  On November 17, 2022, after an opportunity for public comment on the Consent Decree, the Court issued its final judgment in this case in the form of an order entering the Consent Decree. ECF No. 130 (Consent Decree). The Consent Decree, accordingly, is vested with the authority of a court order, and the Court retains jurisdiction to enforce Defendants' compliance therewith. *Id.* at 3.

The Consent Decree requires Defendants to achieve compliance with the 2021 Permit and the Clean Water Act, to undertake interim measures until full compliance can be achieved, and to take steps that may lead to remediation of contamination of the Merrymeeting River by sediments discharged by the Facility. ECF No. 130 (Consent Decree). More specifically, the Defendants must complete construction of, and begin operating, a wastewater treatment system by December 31, 2025, to achieve compliance with the Permit's effluent limitations. *Id.* at 13-15. Until the wastewater treatment system is constructed, the Consent Decree requires the Defendants to engage in measures to improve their waste collection and disposal practices and increase cleaning and maintenance. *Id.* at 8-13. The Defendants are also required to address the buildup of phosphorus-loaded sediment by performing a Merrymeeting River Phosphorus Assessment and a Remediation Options Study to assess pollutant impacts and remediation options. *Id.* at 22-24.

## ARGUMENT

**I.    CLF IS ENTITLED TO ATTORNEY FEES AND COSTS BECAUSE IT HAS PREVAILED ON ITS CLAIMS BY ACHIEVING SOUGHT-AFTER RELIEF THROUGH THE COURT'S AUGUST 27, 2020 ORDER AND ENTRY OF THE CONSENT DECREE.**

Under the Clean Water Act, "'prevailing' or 'substantially prevailing' parties are entitled to be compensated for their litigation costs and attorneys' fees." *CLF v. Patrick*, 767 F. Supp. 2d 244, 249 (D. Mass. 2011) (*quoting* 33 U.S.C. § 1365(d)). A party prevails or substantially prevails[5] who has "achieve[d] some of the benefit . . . sought in bringing suit" by "succeed[ing] on any significant issue." *Tex. State. Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989). At minimum, the achieved, sought-after benefits must "modify[] one party's behavior in a way that directly benefits the other." *PC Puerto Rico, LLC v. Empresas Martínez Valentín Corp.*, 948 F.3d 448, 456 (1st Cir. 2021) (citing *J.S. v. Westerly Sch. Dist.,* 910 F.3d 4, 10 (1st Cir. 2018)).  In determining whether a party has gained sought-after benefits, courts "make a qualitative inquiry" and "compar[e] the results achieved with the reasons for bringing suit." *Westerly Sch. Dist.*, 910 F.3d at 10.

Congress included the Clean Water Act's fee-shifting provision to "encourage citizens to bring meritorious actions." *Clean Water Action v. Searles Auto Recycling, Corp.*, 288 F. Supp. 3d 477, 481 (D. Mass. 2018) (internal citation omitted). Congress recognized the "public service" "performed" by prevailing Clean Water Act citizen plaintiffs whose "legitimate actions" resulted in the sought-after abatement of environmental harms. S. REP. NO. 92-414, at 81 (1971), reprinted in 1972 U.S.C.C.A.N. 3668, 3747. And as the First Circuit noted in a Clean Air Act case, given that citizen plaintiffs "face a certainty of attorneys' fees far higher than any

---

[5] Courts use the terms "prevail" and "substantially prevail" interchangeably. *See, e.g., Burlington v. Dague*, 505 U.S. 557, 565 (1992); *Patrick*, 767 F. Supp. 2d at 249.

personal gain [they] would reap if victorious," fee-shifting for citizen suit plaintiffs makes it "financially . . . possible for such actions to be brought." *Nat. Res. Def. Council, Inc. v. E.P.A.*, 484 F.2d 1331, 1337 (1st Cir. 1973).

In Clean Water Act cases, citizen plaintiffs have prevailed (and achieved sought-after benefits) where a consent decree or other court order has required the defendant to attain "full or substantial compliance" with the Act and their NPDES permit. *Osorio vs. Municipality of Loiza*, No. 13-1352 (BJM), 2016 WL 3264122, at *3 (D.P.R. June 14, 2016) *overruled in nonrelevant part by Perez-Sosa v. Garland*, 22 F.4th 312, 322 (1st Cir. 2022) (plaintiff prevailed where the consent decree requires compliance with the NPDES permit, specific compliance measures, and a remediation project); *Patrick*, 767 F. Supp. 2d at 249 (plaintiff prevailed after obtaining a court ruling mandating remediation and ordering the defendant to develop a plan to prevent future violations). When assessing whether a party has prevailed, courts treat consent decrees as equivalent to other forms of court-ordered relief. *Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("The fact that [plaintiff] prevailed through a settlement rather than through litigation does not weaken [the] claim to fees"); *Osorio*, 2016 WL 3264122, at *2.

Here, CLF prevailed by achieving sought-after benefits for the Merrymeeting River by successfully obtaining Court orders – i.e., the Court's August 27, 2020 Order pertaining to pH violations and the Court's entry of the Consent Decree – that require the Defendant to attain "full or substantial compliance" with the Act and their NPDES permit. Indeed, the relief contained in the August 27, 2020 Order and the Consent Decree is similar to the relief achieved by the prevailing plaintiffs in the Clean Water Act cases above. *See infra.*

As more fully described below, the Court Orders successfully obtained in this action require the Defendants to modify their behavior and deliver CLF's sought-after benefits for the

environment. The ultimate outcome will be a Facility that complies with the Clean Water Act; a cleaner, healthier Merrymeeting River; protection against water quality degradation downstream, in Alton Bay; and the ability for the public, including CLF members, to benefit from the Defendants' compliance and the resulting reduced phosphorus and pH pollution from the Facility. ECF No. 99 (Second Am. Compl.) at 3-5, 26-27.

CLF's primary goal throughout this litigation has been to compel Defendants to come into compliance with the Clean Water Act and its Permit. *Id.* at 34-35; ECF No. 72 (Mot. Summ. J.) at 5. The Court has ordered this relief. ECF No. 130 (Consent Decree) at 6-7. CLF is thus entitled to attorney fees.

### A.    CLF Has Prevailed on its pH Claims by Achieving Sought-after Relief Through the August 27, 2020 Order and the Consent Decree.

The acidity of rivers and streams (measured by pH) is "one of the most important environmental factors limiting species distribution," as a change of acidity outside the optimal range "physiologically stresses many species and can result in decreased reproduction, decreased growth, disease or death." ECF No. 47-29 (EPA, pH CADDIS). To ensure that the Merrymeeting River is protected from harmful acidity, the Defendants' NPDES permit sets a minimum pH level of 6.5 standard units, unless the effluent pH is within half of a standard unit of the ambient upstream river water. ECF No. 47-5 (Permit) at 2, 27.

CLF alleged that Defendants had violated the effluent limits for pH in their Permit at least twenty-four times since 2013, thereby adversely affecting the chemical and biological processes of the Merrymeeting River. ECF No. 99 at 27-34 (Second Am. Compl.); ECF No. 75 (Consol. Mem. Summ. J.) at 15. CLF sought declaratory and injunctive relief compelling the Defendants to meet their permitted pH range in order to balance the acidity in the Merrymeeting River. ECF No. 20 (Am. Compl.) at 28.

In its August 27, 2020 Order, the Court declared that Defendants had violated the pH limits in their 2011 Permit and granted summary judgment to CLF on its counts relating to pH (Counts III and IV in the Second Amended Complaint). ECF No. 85 (Aug. 27, 2020 Order). The Court awarded CLF injunctive relief by ordering Defendants to devise and implement a system to bring it into compliance with the pH limits in the Permit within 90 days. *Id.* at 42. Through the Consent Decree, the Court further orders Defendants to "add a neutralizing agent . . . to buffer the pH" in Outfalls 001 and 002. ECF No. 130 (Consent Decree) at 8.

CLF has prevailed on its pH claims and achieved sought-after injunctive relief both through the Court's August 27, 2020 Order on Summary Judgment and through the Court's entry of the Consent Decree. ECF Nos. 85 at 35–36 (Aug. 27, 2020 Order), 130 (Consent Decree). Just as in *CLF v. Patrick*, CLF won a court order mandating Defendants' compliance with the permit's limit by a set deadline (here, compliance with pH limits within 90 days). 767 F. Supp. 2d at 249 (Court ordered defendant to comply with NPDES permit conditions relating to stormwater management plan within 20 months.).

### B.    CLF Has Prevailed on its Phosphorus and Phosphorus-laden Solids Claims by Achieving Sought-after Relief Through the Consent Decree.

Phosphorus pollution from Defendants' facility has severely degraded the Merrymeeting River. ECF No. 75 (Consol. Mem. Summ. J.) at 10-14. High concentrations of phosphorus triggered eutrophication in the Merrymeeting River, evidenced by low dissolved oxygen levels, cloudy green water, the overgrowth of invasive aquatic plants and algae, and cyanobacteria – a toxic blue-green algae harmful to humans, pets, and wildlife. ECF No. 47-3 (Watershed Management Plan) at 45; ECF No. 47-18 (Cyanobacteria Photos). Marsh Pond, Jones Pond, and Downing Pond (parts of the Merrymeeting River) are choked with filamentous green algae and milfoil (an invasive aquatic plant) and experience regular cyanobacteria outbreaks, preventing

people, including CLF members, from swimming and boating on the River and damaging the ecosystem. ECF No. 47-17 (Rensel Report) at 4-5; ECF No. 47-24 (Hoover Decl.).

In the Second Amended Complaint, ECF No. 99 at 27-34, CLF alleged seven claims relating to the Defendants' discharge of phosphorus and phosphorus-laden solids:

- Count I: violations of New Hampshire water quality standards;

-  Count II: narrative water quality standards violations for interfering with the designated uses of the receiving water and harming aquatic life;

- Count VII and VIII: violations of numeric effluent limits for phosphorus;

- Count V: direct discharge of cleaning water[6];

- Count VI: failure to implement Best Management Practices relating to solids control; and

- The unpermitted discharge of phosphorus from sediment.[7]

In its Second Amended Complaint, CLF sought the following relief for its phosphorus and phosphorus-laden solids claims:

- Physical infrastructure changes at the Facility. CLF sought from Defendants a "proposed plan for bringing Defendants' operation of the Powder Mill Hatchery into compliance. . . including—as appropriate—physical infrastructural changes

---

[6] The Defendants' NPDES Permit prohibits any direct discharge of cleaning water and does not allow discharge of any solids in cleaning water. ECF No. 99-3 (2021 Permit) at 11. Defendants vacuumed solid fish waste from the bottom of the concrete "raceway" troughs where fish are raised and dumped the vacuumed slurry into settling ponds. CLF alleged that rather than properly "decanting" solid-free water little by little from the top of the settling pond after waiting for the solids to settle, Defendants were flooding the pond with clean water, stirring up the solids and discharging the unsettled solids directly into the Merrymeeting River. ECF No. 75 (Consol. Mem. Summ. J.) at 37; ECF No. 99 (Sec. Am. Compl.) at 31.

[7] While the Sediment Discharge claims are not a separate, enumerated Count in the Second Amended Complaint, these claims make up part of Counts I and II (as discharge of phosphorus from sediment contributes to violations of New Hampshire and narrative water quality standards).

and production reductions during the pendency of infrastructural changes." ECF No. 99 (Sec. Am. Comp.) at 35.

- Interim operational changes to reduce pollutant discharges while the Facility's treatment system is under construction. ECF No. 99 (Sec. Am. Com.) at 35; ECF No. 72 (Mot. for Sum. J.) at 5-6.

- The prohibition of Defendants' direct discharge of vacuumed solid fish waste (so-called "cleaning water") into the Merrymeeting River. ECF No. 75 (Consol. Mem. Summ. J.) at 37; ECF No. 99 (Sec. Am. Comp.) at 31, 35-6.

- The implementation of best management practices at the Facility. ECF No. 99 (Sec. Am. Com.) at 32-33, 34-35.[8]

- Interim reductions in fish production. CLF requested that Defendants be required to reduce operations and/or their fish production at the Facility to comply with the phosphorus limits in their Permit. ECF 99 (Sec. Am. Com.) at 35; ECF No. 72 (Mot. for Sum. J) at 5-6.

- Remediation of phosphorus-loaded sediments in the Merrymeeting River (the result of Facility waste build-up). ECF No. 75 (Consol. SJ Mem.) at 6-7. As experts retained by CLF testified, these sediments continue to re-release phosphorus and add to the phosphorus load in the Merrymeeting River. *Id.*[9]

---

[8] The Defendants' NPDES Permit requires the implementation of a best management practices plan to address the control of solids pollution. ECF No. 99-3 (2021 Permit) at 14. The Defendants' best management practices plan includes as solids pollution disposal plan; however, as CLF alleged in Count VI of the Second Amended Complaint, Defendants did not comply with the plan. ECF No. 99 (Sec. Am. Compl.) at 32.

[9] While the Court granted summary judgment to Defendants with respect to the Sediment Discharge claims in Counts I and II, CLF achieved sought-after relief for these claims via provisions of the Consent Decree. ECF No. 85 (Aug. 27, 2020 Order) at 42.

The Consent Decree secures for CLF and CLF members important benefits consistent with the relief CLF sought, including:

- A plan for physical infrastructure changes at the Facility, including a wastewater treatment system, that will lead to Clean Water Act and permit compliance by December 31, 2025. ECF No. 130 (Consent Decree) at 13-15.

- Interim infrastructure and operational changes to reduce phosphorus pollution until the new wastewater treatment system is constructed and operational, including Facility modifications to improve the collection and removal of solids, increased cleaning and maintenance at the Facility, and the use of a neutralizing agent to balance pH. *Id.* at 8-13.

- A prohibition on the direct discharge of vacuumed solid fish waste (cleaning water). Defendants must instead discharge cleaning water from the circular tanks into the ground. *Id.* at 8.

- Implementation of best management practices, including the requirement that Defendants contain solids in tanks "for concentration and off-site disposal as described in the Facility's [Best Management Practices Plan]." *Id.* at 10;

- Potential reductions in fish production. Under the terms of the Consent Decree, three consecutive exceedances of the "Pollution Action Level" trigger the requirement that Defendants change Facility operations, such as by reducing fish production, in order to reduce phosphorus output. *Id.* at 14-16.

- Potential remediation of phosphorus-loaded sediments in the Merrymeeting River. The Defendants must complete a Merrymeeting River Phosphorus Assessment (the "Assessment"), which, among other things, requires sediment sampling and

evaluation to measure phosphorus released from the sediment and an assessment

of the phosphorus entering the water column from sediment. *Id.* at 18-19.[10]

Following the Assessment, Defendants shall conduct a Remediation Options

Study to evaluate options for remediating the Merrymeeting River's downstream

ponds to reverse harm caused by discharged sediments. *Id.* at 19-22.

As a result of these enforceable commitments, the Merrymeeting River will be put on a

path to recovery and attainment with state water quality standards. With lower levels of

phosphorus, the waterbodies will eventually experience higher dissolved oxygen levels, clearer

water, fewer outbreaks of cyanobacteria, and controlled growth of algae and invasive plants like

milfoil. Having secured these sought-after benefits, CLF is a prevailing party. *Patrick*, 767 F.

Supp. 2d at 249 (plaintiff is a prevailing party where defendants are required to complete a

detailed engineering plan); Consent Decree, *Osorio*, 2016 WL 3264122, ECF No. 48-1 (Plaintiff

is a prevailing party where consent decree requires defendants to implement pollutant control

and cleaning measures.).

## II.    CLF'S ATTORNEYS' FEES ARE REASONABLE.

Courts calculate the appropriate attorney fees in a Clean Water Act case using the

lodestar method. *Patrick*, 767 F. Supp. 2d at 250 (applying the lodestar approach to attorney fee

calculation in the context of the CWA). This approach requires the calculation of "the number of

hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gay Officers

Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001) (quoting *Hensley v. Eckerhart*,

---

[10] The Assessment shall include a Sampling Plan. ECF No. 128 (Consent Decree) at 20. "The Sampling Plan shall
include sediment sampling to assess . . . 4) Sediment nutrient-release in the water column during both anoxic and
oxygen rich conditions. . .; and 5) Measurement of redox potential and oxidized microzone thickness to determine
potential for nutrient flux from shallower water column areas that are not subject to stratification." *Id.*

461 U.S. 424, 433 (1983)). Here, the total lodestar is $538,774, which reflects the 2,065.3

hours of work performed by CLF attorneys since May 2018, at the following rates:

| Name | Title | Hours | Hourly Rate | Lodestar |
|------|-------|-------|-------------|----------|
| Thomas Irwin | Vice President and New Hampshire Director | 167.4 | 2018-2019: $365 2020-2021: $375 2022: $385 | $62,233 |
| Heather Govern | Vice President and Director, Clean Air and Water Program | 434.2 | 2018-2019: $365 2020-2021: $375 2022: $385 | $161,044 |
| Rohemir Ramirez | Staff Attorney | 178.8 | 2018-2019: $265 2020-2021: $275 | $47,382 |
| Kenta Tsuda | Staff Attorney | 375.1 | 2018-2019: $265 2020-2021: $275 | $102,528 |
| Caitlin Peale Sloan | Staff Attorney (now Vice President and Massachusetts Director) | 6.1 | 2018-2019: $265 | $1,617 |
| Chelsea Kendall | Associate Attorney | 627 | 2019: $190 2020-2021: $200 2022: $210 | $123,209 |
| | Legal Intern | 111.4 | 2018: $140 | $16,710 |
| Rachel Sinsheimer | Paralegal | 18.7 | 2018: $140 | $2,618 |
| Alex Charnov | Paralegal | 85.2 | 2018-2019: $140 2020: $150 | $11,978 |
| Esther Ritchin | Paralegal | 43.9 | 2020-2021: $150 2022: $160 | $6,656 |
| Ethan Hsi | Paralegal | 17.5 | 2022: $160 | $2,800 |
| **TOTAL** | | **2,065.3** | | **$538,774** |

Heather Govern, Vice President and the director of CLF's Clean Air and Water Program,

has nine years of specialized experience litigating citizen suits under federal environmental

statutes, with a focus on the Clean Water Act. Ex. 1 (Govern Decl.)[11] at 2. Thomas Irwin, Vice

President and CLF's New Hampshire Director, has 26 years of experience as a practicing

---

[11] Citations to "Ex. _" refer to the exhibits to this Memorandum filed herewith and described in Ex. 1 (Govern Decl.).

attorney, including 24 years of specialized experience in environmental law, including litigation using federal and state environmental statutes. Ex. 2 (Irwin Decl.) at 1. Attorneys Govern and Irwin hold senior positions at CLF which are equivalent to the position of partner at a law firm. Ex. 1 (Govern Decl.) at 2; Ex. 2 (Irwin Decl.) 1-3; Ex. 3 (Burger Decl.) at 3-4. In 2009 and 2014, the court granted fee rates of $300 and $350 per hour[12] to senior attorneys and directors employed by public interest organizations with equivalent years of specialized experience. *Carter vs. Toumpas*, No. 07-cv-23-SM, 2009 WL 903743 (Mar. 31, 2009) (ordering fee recovery of $300/hour to the Disability Rights Center and New Hampshire Legal Assistance for a director and an senior attorney with more than 15 years of experience); Decl. of Amy Messner and Order on Fees, *Amanda D. v. Hassan*, Civ. No. 1:12-cv-53-SM (DNH Jan. 17, 2014), ECF Nos. 101-3, 104 (plaintiffs recovered $350/hour for time spent by the director of the Disabilities Rights Center)*.* In 2011, the District of Massachusetts granted CLF attorney fees based on a rate of $310 per hour[13] for time spent by Christopher Kilian, the then-director of CLF's Vermont office. *CLF v. Patrick,* 767 F. Supp. 2d at 257. CLF seeks reimbursement of $365 per hour for work performed by Attorneys Irwin and Govern in 2018 and 2019, $375 per hour for work performed in 2020 and 2021, and $385 per hour for work performed in 2022. These rates are consistent with rates charged by New Hampshire attorneys in private practice. *See* Ex. 3 (Burger affidavit) at 3-4; Ex. 4 (NH Bar Practice Survey) at 48 (the majority of partners and managing partners practicing in New Hampshire charge a standard hourly rate of $300 per hour or more). It is common practice for New Hampshire attorneys to increase their rates annually or biannually to

---

[12] Adjusted for inflation, these rates are the equivalent of $410-$440/hour in 2022 dollars. CPI Inflation Calculator, U.S. Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm (last accessed Oct. 11, 2022). Specifically, $300 in 2009 has the same buying power as approximately $410 in 2022; and $350 in 2014 has the same buying power as approximately $440 in 2022. *Id.*

[13] Adjusted for inflation, a rate of $310/hour is the equivalent of $405/hour in 2022 dollars. CPI Inflation Calculator, U.S. Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm (last accessed Oct. 11, 2022).

reflect inflation and increased experience. *See* Ex. 3 (Burger affidavit) at 2; Ex. 4 (NH Bar

Practice Survey) at 49 (60% of firms with 30-59 attorneys, like CLF, adjust their hourly rates

annually).

Former CLF staff attorneys Rohemir Ramirez and Kenta Tsuda each had five years of

civil environmental litigation experience at the time they were attorneys of record on this case.

Ex. 1 (Govern Decl.) at 3-4. Caitlin Peale Sloan, then-staff attorney and now CLF's

Massachusetts Director, had eight years of specialized environmental enforcement experience

when she began working on this case in 2018. *Id.* at 3. In 2009 and 2014, the court granted fee

rates between $225 and $250[14] to staff attorneys employed by public interest organizations with

similar years of specialized experience. *Carter*, 2009 WL 903743 (ordering fee recovery of

$225/hour to the National Center for Law and Economic Justice and New Hampshire Legal

Assistance for time spent by three staff attorneys); Decl. of Amy Messner and Order on Fees,

*Amanda D.*, Civ. No. 1:12-cv-53-SM (DNH Jan. 17, 2014), ECF Nos. 101-3, 104 (the Disabilities

Rights Center recovered $235 and $250 for time spent by staff attorneys with six and eight years of

experience, respectively), ECF No. 101-3 (Decl. of Amy Messner)*.* In 2011, the District of

Massachusetts granted CLF attorney fees based on a rate of $175 per hour[15] for time spent by

assisting or staff attorneys. *Patrick,* 767 F. Supp. 2d at 257. CLF seeks reimbursement of $265

per hour for work performed by Attorneys Ramirez, Tsuda, and Peale Sloan in 2018 and 2019,

$275 per hour for work performed in 2020 and 2021, and $285 for work performed in 2022. CLF

seeks reimbursement of $190 per hour for work performed by Attorney Kendall in 2019, $200

---

[14] Adjusted for inflation, rates of $225-350/hour are the equivalent of $310-$315/hour in 2022 dollars. CPI Inflation Calculator, U.S. Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm (last accessed Oct. 11, 2022). $225 in 2009 has the same buying power as around $310 in 2022; and $250 in 2014 has the same buying power as around $315 in 2022. *Id.*

[15] Adjusted for inflation, a rate of $175/hour in 2011 is the equivalent of $230/hour in 2022 dollars. CPI Inflation Calculator, U.S. Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm (last accessed Oct. 11, 2022).

for work performed in 2020 and 2021, and $210 for work performed in 2022.[16] These rates are consistent with rates charged by New Hampshire attorneys in private practice. *See* Ex. 3 (Burger affidavit) at 3-4.

During the pendency of this case, CLF has employed four paralegals: Rachel Sinsheimer, Alex Charnov, Esther Ritchin, and Ethan Hsi. This court and other district courts in the First Circuit have awarded $75 to $125[17] per hour in fees for time spent by paralegals. *See* Decl. of William E. Christie, *Rideout et al. v. Gardner,* 1:14-cv-00489-PB (DNH 2015), ECF No. 32-6 (motion mooted by settlement) (seeking $100 per hour for paralegal time); Aff. of Lucy J. Karl and Endorsed Order, *In Re: Dial,* 1:11-md-2263-SM (DNH 2019), ECF No. 244-2, 236 (awarding $125 per hour for paralegal time); *see also CLF v. Patrick,* 767 F. Supp. 2d at 257 (D. Mass. 2011) (awarding $75 per hour for paralegal time). CLF seeks reimbursement of $140 per hour for paralegal work in 2018 and 2019, $150 per hour for work performed in 2020 and 2021, and $160 per hour for work performed in 2022. It is common practice for New Hampshire attorneys to bill for services rendered by paralegals. *See* Ex. 3 (Burger Affidavit) at 5; Ex. 4 (NH Bar Practice Survey) at 50 (94% of firms with 30-59 attorneys charge clients for paralegal time), 51 (47% of firms with 30-59 attorneys charge $150 or more per hour for paralegal time).

CLF has included time spent by current staff attorney Chelsea Kendall when she was a legal intern in 2018. Attorney Kendall brought to her internship nine months of specialized Clean Water Act citizen suit experience through her work as a clinical student with the University of Chicago Law School's Abrams Environmental Law Clinic. Ex. 5 (Kendall Decl.) at 1. During

---

[16] Staff attorney Chelsea Kendall joined CLF as a legal fellow and was attorney of record on this case immediately after graduating law school in 2019.

[17] Adjusted for inflation, rates of $75/hour in 2011 and $100/hour in 2015 are the equivalent of $100/hour and $125/hour in 2022 dollars, respectively. CPI Inflation Calculator, U.S. Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm (last accessed Oct. 11, 2022).

her internship, Attorney Kendall completed substantive drafting and research projects (including drafting the Notice Letter and Complaint) which would normally have been assigned to a staff attorney. *Id.* In *Patrick*, CLF's legal interns were awarded the same rate as paralegals for their legal work ($75 per hour). 767 F. Supp. 2d at 257. CLF seeks reimbursement of $140 per hour for work performed by Attorney Kendall during her 2018 legal internship. These rates are consistent with rates charged by New Hampshire attorneys in private practice. *See* Ex. 3 (Burger affidavit) at 5.

CLF seeks the above hourly rates based on the years of practice, skill, and specialized experience in litigation which CLF's practitioners possess. These rates represent the prevailing rate for New Hampshire-based attorneys in private practice and are consistent with rates recently recovered by public interest plaintiffs in recent cases in the District of New Hampshire. *See* Ex. 3 (Burger affidavit); Ex 4 (NH Practice Survey at 48, 51; *supra* at 21-23.[18]

In calculating their lodestar, CLF's attorneys exercised billing judgment. Ex. 1 (Govern Decl.) at 4; Ex. 2 (Irwin Decl.) at 3; Ex. 3 (Kendall Decl.) at 2. CLF's attorneys omitted from the lodestar amount hours for certain categories of work and work performed by certain CLF advocates for which a private law firm could reasonably and properly bill a paying client. *Id*. CLF has omitted work performed by eleven legal interns, and four undergraduate interns. Ex. 1 (Govern Decl.) at 4.

The number of hours spent by CLF's counsel investigating and prosecuting this case, including the number of hours invested to litigate this fee petition,[19] is reasonable and should be

---

[18] *See also* declarations submitted on behalf of Plaintiffs in *CLF v. Patrick,* (D. Mass. 2011), ECF No. 119-2-3by Ana Francisco and William Curry, which established the prevailing rates for general commercial litigation at or above the rates sought by Plaintiff in this matter.

[19] Time expended by a prevailing plaintiff preparing its motion for attorneys' fees and costs is subject to recovery in a CWA enforcement case. *See Roosevelt Campobello Int'l Park Comm'n v. U.S. E.P.A.*, 711 F.2d 431, 441 (1st Cir.

compensated. That CLF is entitled to fee recovery under this formula – reasonable hours expended multiplied by the prevailing rate – is no less applicable where the determination of liability has been made on the entry of a consent decree. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (holding that a plaintiff can prevail and collect attorney fees where a plaintiff prevails through a consent decree).

The reasonableness of CLF's hours expended on legal work, including time spent in settlement discussions with Defendants and global settlement negotiations with Defendants and EPA,[20] culminating in the Consent Decree, should be viewed in light of the circumstances at the time CLF's efforts were undertaken.

In total, from May 21, 2018 to December 1, 2022, CLF seeks recovery of $538,774 in fees – representing 2,065.3 hours of work completed by 10 attorneys and paralegals.

The benefits CLF has achieved through this action – benefits squarely in line with the Clean Water Act's goal to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a) – merit a full fee award. *See Alfonso v. Aufiero*, 66 F. Supp. 2d 183, 199 (D. Mass. 1999) ("Attorneys' fees should be awarded in a way consistent with the recognized principle that even small damage awards may mean a substantial victory for a policy that Congress considered of the highest importance.") (internal quotations omitted). Accordingly, the Court should award compensation for all time spent by CLF's counsel in prosecuting this matter.

---

1983) (holding that CLF was entitled to reasonable attorneys' fees for work on prevailing issues, including the petition for attorneys' fees); ECF Order, July 12, 2011, *Patrick*, 767 F. Supp. 2d (awarding $17,858.01 in fees and expenses, approximately $11,000 of which was for hours spent on interim fees petition, presuming the court adopted the defendant's proposal).
[20] In the First Circuit, "a court should include time reasonably expended in settlement negotiations within the lodestar when calculating attorneys' fees." *Perez-Sosa*, 22 F.4th at 322.

**III.    CLF IS ENTITLED TO RECOVER FULL EXPERT AND INCIDENTAL EXPENSES.**

Pursuant to Section 1365(d) of the CWA, CLF is also entitled to reimbursement of reasonable expenses and expert fees, and seeks to recover for incidental legal expenses, totaling $37,465.99. Ex. 8 (Expense Breakdown). CLF paid a total of $33,563.28 for testifying and non-testifying experts, $2,821.19 for depositions, and $1,081.52 for other necessary expenses such as court costs and Freedom of Information Act requests. Ex. 8 (Expense Breakdown). Accordingly, CLF is entitled an award of $37,465.99 for reasonable litigation costs and expert fees.

## <u>CONCLUSION</u>

For the foregoing reasons, CLF respectfully requests the Court award the full amount of the requested fees and costs, in the amount of $576,239.99

DATED: December 1, 2022              Respectfully submitted,

CONSERVATION LAW FOUNDATION, INC.

By its attorneys:

/s/ Heather A. Govern
Heather A. Govern, *Admitted Pro Hac Vice*
Chelsea E. Kendall, *Admitted Pro Hac Vice*
Conservation Law Foundation
62 Summer St.
Boston, MA 02110
(617) 850-1765
hgovern@clf.org

/s/ Thomas F. Irwin
Thomas F. Irwin
N.H. Bar No. 11302
Conservation Law Foundation
27 North Main Street
Concord, NH 03301
(603) 225-3060
tirwin@clf.org